# Court of Appeals.

### *October*, 1889.

## PEOPLE *v.* GREENWALL.

MURDER.—PROVING INDEPENDENT CRIME.—HOMICIDE IN
THE COMMISSION OF A FELONY.—INTEMPERATE RE-
MARKS OF COUNSEL IN SUMMING UP.

It is not competent upon a criminal trial to show that the defendant
was guilty of an independent crime not connected with, or lead-
ing up to the crime for which he is on trial, except for the pur-
pose of showing motive, intent, or guilty knowledge.

It is improper for the purpose of impeaching the character of a
party, or a witness, to call witnesses to prove specific acts of dis-
honesty, immorality, or crime.

On the trial of defendant under an indictment for murder, it ap-
peared that the deceased was killed by some one who had en-
tered his house for the purpose of committing a burglary.
There was no direct evidence as to the crime. Defendant, hav-
ing been sworn as a witness in his own behalf, was, on cross-
examination, asked various questions as to his connection with
another burglary at the house of one M. He denied any parti-
cipation in it, and upon re-examination he denied that he ever
entered any man's house in the night-time with intent to steal.
Thereafter M. was recalled as a witness by the prosecution, and
against the objection of defendant, testified that the defendant
did burglariously enter his house in the night-time. *Held*, that
this testimony was error, and that as it was damaging in its na-
ture, and it being impossible to say that it did not have an im-
portant influence upon the minds of the jurors in rendering
their verdict of guilty, the judgment should be reversed.

Under section 183, subdivision 3, of the Penal Code,—which declares
that the killing of a human being " without a design to effect
death by a person engaged in the commission of, or an attempt
to commit a felony either upon or affecting the person killed or
otherwise," is murder in the first degree,—the killing while en-

gaged in the commission of any felony is murder in the first de-
gree, whether the felony was committed upon, or affects any
person, or concerns property only.

Nor is such construction changed by the fact that subdivision 4 of
the same section declares the killing to be murder in the first
degree "when perpetrated in committing the crime of arson in
the first degree." This cannot be held to qualify subdivision 3.

Improper remarks of the district attorney in addressing the jury, which,
by referring to a prior conviction of the defendant, technically
violate section 464 of the Code of Criminal Procedure, are not
sufficient grounds for a reversal of a conviction, where the pre-
cise circumstances under which the language was used or what
prompted it, is not shown by the record, especially where the
judge emphatically charged the jury that they must base their
verdict exclusively upon the law and the evidence.

Appeal by the defendant, John Greenwall, from a
judgment entered upon a conviction of murder in the first
degree, rendered by the Court of Sessions of Kings County,
Hon. HENRY A. MOORE, County Judge of Kings County,
presiding.

The defendant was jointly indicted with Charles Miller,
for the murder of Lyman S. Weeks. The indictment con-
tained two counts. The first, charging the killing of Ly-
man S. Weeks from deliberate and premeditated design to
effect his death; and second, charging the same killing to
have been done while the defendant was engaged in the
commission of a burglary and larceny in the house of the
deceased.

The appellant was twice tried, and there were two ap-
peals. Evidence was introduced on the trial tending to
prove the *corpus delicti* as to the charge of the second
count. The evidence was circumstantial.

On the first trial defendant was convicted of murder in
the first degree, and from the judgment thereon entered
May 27, 1887, defendant appealed to the Court of Appeals.

*C. F. Kingsley*, for appellant.

Under the old law all homicide was murder in the first

degree when perpetrated by a person engaged in the com-
mission of a felony; but in the Penal Code, section 183,
words of limitation are introduced. The felony must be
" either upon or affecting the person killed or otherwise."
These words are new, and change the law. Statutes must
be so construed so as to give force and effect to every word.
People v. Stephens, 71 N. Y. 527, 550; People v. Mc-
Gloin, 91 Id. 241; 1 N. Y. Crim. Rep. 154. No intelligi-
ble construction can be put upon the whole sentence unless
the words " or others" mean " or another," and that this is
their meaning seems probable from the use of the words
" or of another" in section 189, subdivision 1; section 193,
subdivision 1.

The court erred in charging the jury that the *corpus de-
licti* was established as a matter of fact, and was submitted
to them only upon the question whether the defendant was
the man who committed the crime. *Penal Code,* § 181.
It was error to admit the evidence of Mr. Mohringer in
rebuttal. This line of examination was within the rule
as to specified facts tending to establish a bad moral char
acter, but, the subject being collateral, his answers in the
negative were conclusive and do not raise an issue to be
tried. It was clearly error. therefore, to introduce evidence
in rebuttal to contradict him. People v. Ware, 29 *Hun,*
473; 1 N. Y. Crim. Rep. 166; affirmed, 92 N. Y. 653;
Stokes v. People, 52 N. Y. 164.

*James W. Ridgeway,* district attorney, for the people,
respondent.

An error in the ruling made upon the trial which could
not have prejudiced the appellant, will not be deemed suffi-
cient on appeal to reverse the judgment. Tenney v. Ber-
ger, 93 N. Y. 524; Story v. Williamsburgh Masonic Asso-
ciation, 95 Id. 474; Thorne v. Turck, 94 Id. 90; Ellwanger
v. Fish, 60 Id. 651; Flannagan v. Maddin, 81 Id. 623;
Downs v. N. Y. C., etc. R. R. Co., 56 Id. 664. The court
is not bound to adopt the language of the counsel request-

ing to charge a given proposition even when correct in the abstract, provided that the court charge the law correctly and substantially as represented. Moett v. People, 85 N. Y. 373.

After the case has been properly submitted to the jury, the court cannot be called upon again to repeat in different words or pass upon abstract and theoretical questions. People v. McCallam, 3 N. Y. Crim. Rep. 189; People v. Mills, Id. 184.

The testimony of Mohringer was in contradiction of the testimony of the defendant while under examination of his own counsel. Objection does not lie to questions of the prosecution on the ground that they show specific acts tending to prove bad moral character. Pontius v. People, 82 N. Y. 339. The person who committed the murder was a burglar, and it was material and competent to show that the prisoner was a professional burglar, especially as he offered himself as a witness, and those questions were asked to affect his credit and not to attack his general character. Maine v. People, 9 Hun, 117, 118; Brandon v. People, 42 N. Y. 265. Questions of this kind are in the discretion of the Court, and are not subject to review except in cases of manifest abuse or injustice. Third Great Western Turnpike Road Co. v. Loomis, 32 N. Y. 127; La Beau v. People, 34 Id. 223.

Upon this first appeal the Court of Appeals delivered February 7, 1888, the following opinion:

EARL, J.—The defendant was indicted for the murder of Lyman S. Weeks, in the City of Brooklyn, on the 15th day of March, 1887. He was tried and convicted of murder in the first degree, and has brought this appeal directly to this court under chapter 493 of the Laws of 1887.

It is undisputed that Mr. Weeks was killed by a pistol-shot fired by some person who had burglariously entered his house in the night-time. There was no witness who

saw or heard the shot fired, or was able to testify that the defendant was the person who fired it, or that he was present in the house of Mr. Weeks on the night of the homicide.

The evidence on the part of the people to connect the defendant with the crime, and to establish his guilt was, in substance, as follows: Three witnesses were called who gave evidence tending to show, by their identification of him, that he was in the vicinity of Mr. Weeks' house, on the night of March 15, near the time when the homicide was committed; that shortly before that day, he had a pistol of the same calibre as the one had which was fired at Mr. Weeks, and that after the homicide it disappeared from his possession; that on the night of the homicide he wore a Prince Albert coat which also thereafter disappeared. In addition to this, there was evidence that the defendant was a burglar, an associate of criminals, and that shortly after the homicide he confessed the crime to two of his criminal comrades. At the time of his arrest, he denied that he had ever been in the City of Brooklyn; and that denial was, upon the trial, shown to be false.

On the part of the defense, evidence was given tending to throw some doubt upon the identification of the defendant by the three witnesses called upon the part of the people to show his presence near Mr. Weeks' house on the night of the homicide. The defendant produced as a witness Charles Miller, who was jointly indicted with him for the same murder, and he gave evidence tending to show that the person who committed the crime was Paul Krause, and that the defendant had no connection with it; and there was some other evidence on the part of the defense, tending, in some degree, to show that Krause was implicated in the crime. The defendant was sworn as a witness in his own behalf, and positively denied his guilt, and his presence at or near the scene of the crime on the night of the fifteenth of March.

For the purpose of showing that the defendant di1 not

tell the truth when he denied that he had ever been in the City of Brooklyn, George Mohring was called as a witness on behalf of the people, and testified that the defendant worked for him in the City of Brooklyn twenty-two days, commencing on the sixth day of January, 1887, and during that time slept in his house. And his evidence was confirmed by that of his wife.

The defendant also testified that he worked and lived with Mohring in the City of Brooklyn as testified to by him. Upon his cross-examination he was questioned as to various crimes with which he was supposed to have been connected, and he admitted that he had been in the State prison. He was then examined as follows in reference to a crime alleged to have been committed at Mr. Mohring's house:

"Q. After you left Mohring's house did you and Butch Miller, within a few days afterwards, enter Mohring's house about one o'clock in the morning? A. No. Q. Were not you, and Butch Miller, found in Mohring's house about one o'clock in the morning? A. No. Q. And that you ran into the cellar, and out of the house, leaving behind you a knife and your shoes? A. No? Q. And didn't you ask him, two days before you went in the house, whether he had a pistol in the house or not? A. No? Q. Did you ever ask him if he ever had burglars enter his house? A. No. Q. Did you say to him, 'Would you shoot a burglar if you found him in the house?' and didn't he reply to you that he had no pistol to shoot anybody with? A. No; I didn't care whether he had a pistol in his house or not."

Upon his re-examination on his own behalf, he denied that he ever entered any man's house in the night with intent to steal. Then, after the defendant had rested his case, Mohring was recalled for the prosecution, and the following took place: " Q. Did you ever see that knife before? A. I never seen it until he came to work for me; Greenwall had that when he worked for me."

Defendant's counsel moved to strike out the last answer

as it is collateral, and because the prosecuting attorney is contradicting his own witness.

*The Prosecuting Attorney*—" The evidence is admissible in rebuttal ; the defendant swore he was not in the house of the witness; and it is offered as to character."

THE COURT.—" Admitted as to whether the accused broke into this witness' house."

" Q. When Greenwall worked there did you see him have that knife? A. Yes. Q. Do you remember his whetting it on a stone to shave himself? (Objected to.) Q. Was your house entered at any time after Greenwall left there? A. Yes. Q. At what time in the night? A. One o'clock. Q. How did you know there was anybody in the house at one o'clock at night? A. I slept in the front bed-room, and I heard somebody up in the garret ; I heard somebody sneak up there without any shoes on ; then I went in the back room and called my wife, and we went up there together; then when I came up in the garret I saw two men up there. Q. Did you see two men in the room ? A. Yes. Q. Did you speak to the two men ? A. I spoke in German, ' What are you doing here?' Then they gave the answer, 'Nothing.' Q. Who were the men, if you know? A. I can swear to it that Greenwall was one of them, and the other I did not know. Q. Did they answer you in German or in English? A. They told me in German ; then I turned around to come down stairs and they came after me, and passed me and threw the lamp out of my hands, and went down three flights of stairs, down through the cellar, out. Q. Did you go down the cellar after them? Q. I went down the cellar until they went out the cellar. Q. Did you find anything in the cellar ? A. I had a shelf there by the door where they broke in, and on the shelf lay these two pair of shoes and this knife. Q. How did these two men enter this house? A. They came through the garden and went into the cellar; in the cellar there is a partition of boards ; they bursted one of the boards off and went in from the cellar up. Q. Was any-

thing the matter with any of the bolts? A. They broke one of the boards out; then they went through the partition; and I had about fifty-three bottles of sherry wines there and they moved that. Q. Did you see any clippings to indicate that a knife had been used? A. No."

The Court.—" Tell what else you saw. A. I saw they cut the bolt out and through that made an entrance. Q. A few days before you discovered Greenwall in your house, did you have any talk with him about burglars, pistols or anything of that kind?" (Objection sustained.)

It is too clear for reasonable dispute that this evidence was incompetent. It was not offered for the purpose of showing that the defendant was in Brooklyn at the time, and thus contradicting what he stated at the time of his arrest, because that had already been proved by Mohring and his wife, and the defendant had admitted it in his own evidence. It was not admissible for the simple purpose of contradicting the evidence of the defendant, and thus discrediting him by the contradiction, because his cross-examination as to the burglary upon the house of Mohring was collateral; and it is familiar law that the people were bound by his answers given upon such cross-examination, and that they could not afterward call witnesses to contradict him in reference to such answers. Stokes *v.* People, 53 *N. Y.* 164; People *v.* Ware, 29 *Hun,* 473; 1 *N. Y. Crim. Rep.* 166; affirmed, 92 *N. Y.* 653. Nor was it admissible in rebuttal of the defendant's evidence, given on his re-examination, that he had 'never entered any man's house in the night-time for the purpose of stealing. That evidence was rendered competent by the course of his cross-examination, and did not lay the foundation for proof of the crime committed at Mohring's house. It was not competent for the purpose of showing that the defendant was a burglar, and addicted to the crime of burglary. It is never competent upon a criminal trial to show that the defendant was guilty of an independent crime not connected with or leading up to the crime for which he is on trial, except for the purpose

of showing motive, interest or guilty knowledge, and this evidence was not proper or competent for that purpose. People *v.* Sharp, 107 *N. Y.* 427; 5 *N. Y. Crim. Rep.* 569. Nor was it competent in rebuttal of evidence introduced by the defendant on his own behalf as to his good character. It is never proper for the purpose of impeaching the character of a party or a witness to call witnesses to prove specific acts of dishonesty, immorality or crime. If the people desired to prove that the defendant's character was bad, the only course open to them was to call witnesses who were acquainted with his character. Commonwealth *v.* O'Brien, 119 *Mass.* 342; Troup *v.* Sherwood, 3 *Johns. Ch.* 558; Wehrkamp *v.* Willet, 4 *Abb. App. Dec.* 548; Bakeman *v.* Rose, 18 *Wend.* 146; People *v.* Rector, 19 *Id.* 569; Corning *v.* Corning, 6 *N. Y.* 97; Rathbun *v.* Ross, 46 *Barb.* 127; 1 *Greenl. Ev.* § 461. But there was no foundation for calling witnesses to impeach the defendant's character. He had not by any evidence on his part really put his character in issue. All the evidence on the part of the people, as well as that on the part of the defense, tended to show that his character was bad. There was but a single witness who, by any possibility, could be said to have been called by the defendant as to his character, and the whole of his direct evidence is as follows:

" I live at 856 Eighth avenue, New York; my business is tailor; I am engaged in business for myself; I have known the defendant here, John Greenwall, since August, 1884; he worked for me from that time until Thanksgiving; he is a pretty fair tailor by trade. Q. Did you discharge him, or did he leave you? A. He left me. Q. During the time he worked for you did you find him a good workman and an honest man? A. I cannot complain about him; he was a good workman and didn't steal anything." On his cross-examination this witness testified that while the defendant worked for him, he told him that he had left Germany because he had killed a man. Here was certainly no evidence as to his good character, and there was nothing

in this evidence which justified the people in entering upon a general impeachment of his character.

The evidence of Mohring above set out was, therefore, clearly incompetent.    It was very damaging in its nature, and we cannot say that it did not have an important influence upon the minds of the jurors in reaching their verdict. The defendant's guilt was not so clearly established by other proof that it can be said that this evidence was harmless. It was objected to; the attention of the court and of the district attorney was clearly called to its incompetency, and under such circumstances we are of opinion that the error in its reception can not and ought not to be disregarded. A person on trial for his life is entitled to all the advantages which the laws give him, and among them is the right to have his case submitted to an impartial jury upon competent evidence.

The judgment should therefore, be reversed, and new trial granted.

All concur.

Judgment reversed.

---

The defendant was tried a second time, after the reversal of his conviction by the Court of Appeals on the ground set forth in the foregoing opinion, and on such second trial was convicted of murder in the first degree, and judgment thereon was entered in the same court and before the same Judge, January 22, 1889.    From the judgment entered upon the second conviction defendant again appealed to the Court of Appeals.

On the second appeal the points of counsel were in substance the same as on the first appeal, and the counsel were the same.

Upon this second appeal the Court of Appeals delivered the following opinion:

EARL, J.—This is the same case which was here upon a prior appeal. 108 *N. Y.* 296; *ante*, p. 302. The new trial has again resulted in the defendant's conviction. A careful scrutiny of the record satisfies us that there was ample evidence to justify the verdict of the jury. There was no dispute that Mr. Weeks was murdered by some person while engaged in a burglary in the night-time at his house, and upon the trial the only disputed question of fact was as to the identity of the criminal. The confession of the defendant to one of his criminal associates, and the other evidence, was ample to identify him, beyond a reasonable doubt, as the author of the crime.

The indictment contains two counts. In the first count the defendant is charged with killing Mr. Weeks from a deliberate and premeditated design to effect his death; and in the second count he is charged with killing him while engaged in the commission of a felony, to wit, the crime of burglary. The evidence was sufficient to warrant a verdict of guilty under either count, and the jury were instructed that they might, as they should view the evidence, convict under either count. It appears, however, from the charge of the trial judge, that the prosecution mainly relied upon the second count, and the jury found the defendant guilty of murder in the first degree under that count. No objection was made, upon the trial, or upon the motion subsequently made for a new trial, to the indictment. But upon the argument of this appeal the objection was for the first time made that the second count in the indictment does not charge the crime of murder in the first degree. It is provided by subdivision 3 of section 183 of the Penal Code, that the killing of a human being " without a design to effect death, by a person engaged in the commission of, or in an attempt to commit, a felony, either upon or affecting the person killed or otherwise," is murder in the first degree. The defendant's counsel contends that the words " or otherwise," mean " or another," and that therefore the second count does not charge murder in the first degree, because it

does not allege that the defendant killed Mr. Weeks while engaged in the commission of or attempt to commit a felony either upon or affecting him or some other person.

We think it is entirely clear that it was intended to make the killing of any human being while engaged in the commission of any felony murder in the first degree, whether the felony was committed upon or affects any person, or concerns property only. No intelligent draughtsman of an act would use the inappropriate word "otherwise" in the sense of "another." Such an absurd use of language cannot be supposed. In the Revised Statutes (vol. 2, p. 657, § 5, subd. 3,) it was provided that such killing, "when perpetrated without any design to effect death, by a person engaged in the commission of any felony," was murder. By the act, chapter 410 of the Laws of 1860, the crime of murder was divided into the first and second degrees, and the degrees were defined as follows: "All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration, or the attempt to perpetrate, any arson, rape, robbery, or burglary, or in any attempt to escape from imprisonment, shall be deemed murder of the first degree, and all other kinds of murder shall be deemed murder of the second degree." Under this act the particular crimes in which the criminal may be engaged at the time of the killing, in order to constitute murder in the first degree, are specified; and if the killing was perpetrated while the criminal was engaged in the commission of a crime not specified, it was murder in the second degree. The act of 1860 was repealed by the act, chapter 197 of the Laws of 1862; and by that act section 5 of the Revised Statutes, above quoted, was re-enacted down to subdivision 3 thereof, and that was amended so as to read as follows: "*Third.* When perpetrated while committing the crime of arson in the first degree." Under that act it was only when the killing was perpetrated in committing the crime of arson in the first degree that the crime

was made murder in the first degree, and the killing of a human being, while engaged in any other felony, was murder only in the second degree. By the act, chapter 644 of the Laws of 1873, the act of 1862 was amended so that subdivision 3 of section 5 of the Revised Statutes again took its original form. By the act, chapter 333 of the Laws of 1876, the act of 1873 was amended so as to make subdivision 3 of section 5 of the Revised Statutes read as follows: "*Third.* When perpetrated by a person engaged in the commission of any felony." The words "without any design to effect death," before in the section, were omitted. While the section was in this form, a question was raised whether it was murder in the first degree to kill a human being while engaged in an assault upon the person killed, but without any premeditated design to effect the death of such person. Buel *v.* People, 18 *Hun*, 487; 78 *N. Y.* 492. Section 183 of the Penal Code was draughted before that question was put at rest by the decisions cited, and hence the phraseology of subdivision 3 was again changed, as we may infer, to make it certain that the killing should be murder in the first degree, whether the felony was committed upon or affected the person killed or was any other kind of felony.

But in the Code a further subdivision is added, as follows: "When perpetrated in committing the crime of arson in the first degree." It is claimed that this language must be read in connection with the prior subdivision, and that it qualifies it, and shows that the felony there referred to means only felonies upon or affecting the person killed, or some other person; and that the only other felony intended is arson in the first degree. Why subdivision 4 was added cannot certainly be perceived. Its grammatical structure is such as to lead us to suppose that it was added by some one after the prior portions of the section had been draughted and completed by another. The draughtsman of subdivision 4 clearly did not have a clear comprehension of the force and effect of the prior subdivision. It may have been in-

tended to make the crime murder in the first degree in case a human being was burned to death in consequence of the crime of arson in the first degree. Under the construction contended for, the killing of a human being, without deliberate and premeditated design to effect death, while in the commission of any felony, not upon or affecting the person of some human being, except the crime of arson in the first degree, would not be murder in any degree, and such has never been the law in this State, and it was not the common law. In People *v.* Johnson, 110 *N. Y.* 134, the killing took place while the defendant was attempting to escape from jail under such circumstances as to make his attempt a felony, and the conviction was affirmed. The point, however, which we have been considering, was not taken in that case, and yet if the point is well taken the defendant there ought not to have been convicted. We are satisfied that it is not well taken.

The defendant was a witness upon his own behalf, and during his cross-examination the district attorney said, in the presence and hearing of the jury: " I convicted the defendant before, and I will do it again." The defendant's counsel immediately arose, and, addressing the court, said " that reference to the former conviction is a violation of law, and I ask it become a matter of record in this court." This the court then declined, but it was subsequently made part of the record. In his address to the jury, the district attorney used the following language: " Ask Butch Miller, the man who is jointly indicted with the defendant for the murder of Mr. Weeks, where he was on the night of the 15th of March, 1887, and see if he won't tell you he was on De Kalb avenue, and opposite the Weeks house. Ask Butch Miller if he was not in the saloon where Dr. Atwood said he saw them both. Ask Butch Miller if he did not take the car of which Dickerson was the conductor, and ride to the ferry after twelve o'clock on the night in question. Ask Miller if he did not cross the ferry at the time and place as testified to by Mr. Chamberlain. The gentle-

man on the other side used him as a witness, and profited by the experience." Miller was not a witness upon this trial, but seems to have been a witness for the defendant upon the former trial. For the use of the language quoted, and upon other grounds, the defendant before judgment moved for a new trial, which was denied. The language of the district attorney first quoted was improper, and it may have been a technical violation of section 464 of the Code of Criminal Procedure, which provides that, upon the new trial after the reversal of a former conviction, " the former verdict cannot be used or referred to, either in evidence or on argument." But we do not know under what precise circumstances the language was used, nor what prompted it. So the words used by the district attorney in his summing up should not have been spoken. But the attention of the court was not called to them, and no objection was made to them at the time. The whole address of the district attorney is not given, and thus we have not before us the context, and are unable to see how, if at all, the words are qualified. The judge very emphatically charged the jury that they must base their verdict exclusively upon the law and the evidence, and, if the charge was not sufficiently explicit in this respect, it would undoubtedly have been made so if he had been properly requested. If the intemperate remarks of the prosecuting attorney in criminal cases, made in the heat and excitement of the trial, and sometimes under the provocation of language used by counsel for the defendant, may always be the foundation for a new trial, the administration of criminal justice will become very uncertain. The district attorney, representing the majesty of the people, and having no responsibility except fairly to discharge his duty, should put himself under proper restraint, and should not, in his remarks in the hearing of the jury, go beyond the evidence, or the bounds of a reasonable moderation. The presiding judge can, however, control intemperate language, or so guide the minds of the jury that it may not have injurious effect. If, however, this

court can see that the defendant has been prejudiced by such language, it has power, under ,sections 527 and 528 of the Code of Criminal Procedure, to order a new trial. But before a new trial should be ordered upon such a ground the court should be satisfied that justice requires it. Here the trial judge, who heard all that was said and done upon the trial, refused to grant a new trial, and we are satisfied that justice does not require a new trial, and the defendant has no absolute right to a new trial. Two juries, upon substantially the same evidence, have passed upon his case with the same result.

There can be no reasonable doubt of his guilt, and the judgment should be affirmed.

All concur.