## THE STATE OF CONNECTICUT vs. LAWRENCE FERRONE.

First Judicial District, Hartford, March Term, 1921.

WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

The State's Attorney is not only an officer of the court, like every attorney, but is also a high public officer representing the people of the State, who seek impartial justice for the guilty as much as for the innocent; and hence his conduct and language in the trial of cases in which human life or liberty are at stake should be forceful, but fair, because he represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice, or resentment.

The privilege of the State's Attorney as counsel in addressing the jury should not be too closely narrowed or unduly hampered, but it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider.

In the present case the accused was on trial for having, by night, possession of burglar's tools or instruments of housebreaking, without lawful excuse, in violation of General Statutes, § 6238. It had appeared in evidence that the accused's three companions at the time of his arrest had also been arrested and tried for the same crime, but it had not appeared that they had been convicted. In his final argument the State's Attorney asked why, if he saw fit to put the other three away, let the accused go. The defense at once moved that the case be withdrawn from the jury, but the court denied the motion. *Held* that the failure of the trial court to reprove the State's Attorney, or give such instructions as would, as far as possible, remove the effect of his words, and its implied confirmation of them by its denial of the motion, constituted prejudicial error to the accused.

The accused had introduced in evidence, without objection, the depositions of two witnesses residing in another State, which he had caused to be taken according to the provisions of § 6637 of the General Statutes. In his closing argument the State's Attorney asked why the witnesses did not say in their depositions why they were not there in person. The court again denied the accused's motion to withdraw the case from the jury. *Held* that there was no evidence to support the suggestion which it was attempted to convey, that the witnesses had cause to fear unpleasant consequences if they came within the jurisdiction of the criminal courts of this State, and that the rights of the accused were prejudiced by these

The State *v.* Ferrone.

remarks and the court's action concerning them, and that he was entitled to a new trial.

A police lieutenant, testifying for the State, was allowed to relate the instructions given by him to his subordinate officers in directing them to make the arrest of the accused and his companions, wherein he had stated, among other things, that the accused and his companions looked like gunmen, that gasoline had been stolen, and that their car was probably stolen. *Held* that the State was entitled to show the fact that instructions were given to the officers and that they acted accordingly, but that the specific instructions were inadmissible as hearsay strongly prejudicial to the accused.

The accused was charged in one information with the particular offense for which he was arrested, and also, under the habitual offender provision of the Indeterminate Sentence Act (§ 6660), with having twice before been convicted, sentenced and imprisoned in a State prison. Against objections by the accused the court refused to strike out of the information the statements relating to former convictions and ordered both issues tried at the same time. *Held* that as the statute imperatively fixes the maximum sentence where one has twice before been convicted, sentenced and imprisoned, the defendant should be apprised in the information of a claim for such a penalty, and hence it was not error to deny the motion to strike out, but it was error, depriving the accused of a fair trial, to order both issues tried at the same time.

In a prosecution where the accused is charged with having been twice before convicted, sentenced and imprisoned in a State prison, the information should be in two separate parts, each signed by the prosecutor, and in the first part the particular offense with which the accused is charged should be set out, while in the other the former convictions should be alleged. After the plea of the accused to the entire information has been taken in the absence of the jury, the trial should proceed only on the first part of the information, without any reference to the former convictions, and, if the jury return a verdict of guilty, the trial should then proceed upon the second part of the information, without reswearing of the jury, unless, meanwhile, the accused has pleaded guilty to this part of the information or has chosen to submit this issue to the court.

Argued March 8th—decided April 27th, 1921.

INFORMATION for having burglar's tools in his possession in the night season, without lawful excuse, and alleging that the accused had twice theretofore been convicted, sentenced and imprisoned, brought to the Superior Court in Hartford County and tried to the

jury before *Haines, J.;* verdict and judgment of guilty, and appeal by the accused. *Error and new trial ordered.*

*Benjamin Slade,* for the appellant (the accused).

*Newell Jennings,* with whom, on the brief, was *Hugh M. Alcorn,* State's Attorney, for the appellee (the State).

BURPEE, J. When the accused was arrested he was riding in an automobile about two o'clock in the morning with three companions. They were all taken to the police station and examined and searched at the same time. Loaded revolvers were found on the accused's companions. The automobile was searched, and behind the cushion of the seat in which the accused had been sitting another loaded revolver was found, and on the floor under the same seat two steel bars. The four men were brought before the police court of Hartford, by which the accused was discharged and his three companions held for trial, and afterward tried by the Superior Court in Hartford County. They were charged with having in their possession by night, without lawful excuse, instruments of housebreaking known as "jimmies." They were found guilty and sentenced to the State prison. Subsequently the accused was arrested and charged with the same crime, committed with these companions at the same time and in the same manner and circumstances. During his trial all the foregoing facts, except the conviction of his companions, appeared in evidence, and references were frequently made to their trial; but no evidence was offered showing, or tending to show, the result of their trial. During the final argument the State's Attorney said to the jury: "If I saw fit to put the other three men away, why let Ferrone go?" Counsel for the accused at once

objected, and moved that the case be withdrawn from the jury because of this remark. The court denied the motion, and the accused excepted, and makes this ruling a reason of appeal.

The record discloses that the trial court made its ruling in the belief that the conviction of the companions of the accused, as well as their trial, had been frequently referred to during the trial of the accused. It so stated in the finding originally made, but subsequently, on motion of counsel for the accused, it was convinced of its mistake, and corrected the finding by striking out that statement. Here, then, we have words of the State's Attorney which plainly were calculated to inform the jury that the three other men who were associated with the accused in the same crime for which he was then on trial by them had been convicted of that crime by another jury, and also the suggestion or appeal that therefore there was no reason why they should let the accused escape conviction; that is, the State's Attorney's remark referred to, and he argued from, a fact which was not in evidence. This the State's Attorney had no right to do, and the court should not have permitted. While it was not necessary, under our practice, to grant the motion to withdraw the case from the jury, the court should have reproved the State's Attorney at once, or in its charge should have given such instructions to the jury as would, as far as possible, remove the effect of his words. We presume the court would have done something of this kind if it had not been misled by the belief that the State's Attorney referred to a matter in evidence in this case. But by its action on the motion of the counsel for the accused it confirmed the information implied in the State's Attorney's words, and added weight to his argument, which he based upon a fact not in evidence. The objectionable language was intended and

adapted to influence the minds of the jurors against the accused, and the action of the court approved the purpose and increased the effect. Here we have no questions concerning the exercise of its discretionary power by the court, or concerning the influence of the language upon the verdict, which were decisive in *State* v. *Laudano,* 74 Conn. 638, 646, 51 Atl. 860. Considering the circumstances in this case, no reasonable man can doubt that the jury not only may have been, but most probably was, so unfavorably influenced against the accused as to deprive him of a fair trial. This is sufficient reason to grant a new trial. *Williams* v. *United States,* 168 U. S. 382, 18 Sup. Ct. 92; *People* v. *Aikin,* 66 Mich. 460, 33 N. W. 821; *Anderson* v. *State,* 104 Ala. 83, 16 So. 108; *McDonald* v. *The People,* 126 Ill. 150, 18 N. E. 817; *State* v. *Greenleaf,* 71 N. H. 606, 54 Atl. 38; *People* v. *Fong Sing,* 38 Cal. App. 253, 175 Pac. 911; *State* v. *Martel,* 103 Me. 63, 68 Atl. 454; *People* v. *Fielding,* 158 N. Y. 542, 53 N. E. 497.

In *Tucker* v. *Henniker,* 41 N. H. 317, 323, the court said: "It would seem utterly vain, and quite useless, to caution jurors, in the progress of a trial, against listening to conversations out of the court room in regard to the merits of a cause, if they are to be permitted to listen in the jury box to statements of facts calculated to have a bearing upon their judgment, enforced and illustrated by all the eloquence and ability of learned, zealous and interested counsel."

Comments on facts not proved are outside of the cause, are legally irrelevant to the matter in question, and therefore are not pertinent. Whenever such a statement has or probably has had an influence upon a verdict prejudicial to either party, it should be set aside. In the case in hand we cannot construe the language of the State's Attorney into a harmless or inoffensive meaning, as was possible in *State* v. *Washe-*

*lesky*, 81 Conn. 22, 28, 70 Atl. 62. It is apparent from the nature of the statement itself that it may have influenced the verdict against the accused. *Worden* v. *Gore-Meenan Co.*, 83 Conn. 642, 653, 78 Atl. 422. Without regard to the propriety or impropriety of this conduct, the material fact is that because of it the State may have obtained an advantage over the accused which it is not entitled to retain.

The accused assigns as a reason of appeal the action of the trial court concerning another comment or suggestion made by the State's Attorney in his last argument. It was a part of the defense that the steel bars found in the automobile on the floor in front of the seat in which the accused was riding when he and his companions were arrested, were not instruments for housebreaking, but tools ordinarily used and carried on automobiles. For this purpose the accused introduced in evidence the depositions of two witnesses residing in Massachusetts, which he had caused to be taken according to the provisions of § 6637 of the General Statutes. These witnesses stated in these depositions that these steel bars belonged to them; that they had loaned them to the chauffeur who drove the automobile in which the accused was riding when he was arrested; that they had frequently used these bars in prying off tires and repairing automobiles; that they had seen others using similar bars for such work; and that they had seen this chauffeur several times within two months using these bars on automobiles. This was most important evidence in favor of the accused, because, by the express terms of the statute describing the crime for which he was on trial, the proof of the excuse for having in his possession instruments of the kind these bars were alleged to be was upon the accused. By the terms of the statute, the State's Attorney had had notice of the taking of these deposi-

tions and opportunity to be present to cross-examine the witnesses, or to file cross-interrogatories if he preferred. He had done neither. He offered no objection to the depositions when they were read during the trial. In his closing argument he said to the jury, referring to the deponents: "Why didn't they say in their depositions why they are not here in person?" The accused moved at once to have the case withdrawn from the jury, the court denied the motion, and the accused excepted.

The reason why these deponents were not in court was not material or relevant. It may have been a good one, such as their residence in another State and at considerable distance from the place of trial, or their loss of time and interruption of their business, or the expense, if they had attended the trial in person. Or the reason may have been that they had cause to fear unpleasant consequences to themselves if they came within the jurisdiction of the criminal courts of this State. The latter reason was suggested to the jurors, and thus they may have been prejudiced against the character of the deponents and consequently may have doubted their credibility. But there was no evidence, nor reasonable inference from any evidence, to support such a suggestion.

In considering these reasons of appeal, we find the following cases pertinent and illuminating: In *Rea* v. *Harrington*, 58 Vt. 181, 190, 2 Atl. 475, 481, the court said: "Legitimate argument elucidates the truth. Its power and usefulness in this behalf are very great. The largest latitude should therefore be allowed to counsel in argument fairly within the scope of the evidence. But it has been repeatedly held in other jurisdictions and recently in this, that when counsel persistently travel out of the record, basing argument on facts not appearing, and appealing to prejudice,

irrelevant to the case and outside of the proof, it not only merits the severe censure of the court, but is valid ground for exception." In *People* v. *Fong Sing*, 38 Cal. App. 253, 266, 175 Pac. 911, it was declared that it was not within the sphere of legitimate argument by the public prosecutor "to prejudice the standing of the accused in the minds of those who are to determine an issue so serious to him by insinuating in the course of his address that some fact bearing strongly against the accused which had not been proved by proper evidence in reality exists," and that such remarks would be cause to set aside a verdict if they had not been treated with "sufficient corrective" by the court in its instructions to the jury. In *State* v. *Greenleaf*, 71 N. H. 606, 617, 54 Atl. 38, the attorney for the State said in his closing argument: "This statement was taken right off the very next day after the affair happened," referring to a portion of the testimony of a State witness. There was no evidence that this witness had ever given any statement before he testified on the stand. The court held that this assertion was "manifestly intended" and was "calculated to prejudice" the accused by securing a higher degree of credit for this witness than he would have had otherwise; and that, "the evil not having been remedied," it stood "upon the record as reversible error." In *Brown* v. *Swineford*, 44 Wis. 282, 292, counsel in summing up commented on the defendant's connection with rich corporations and his consequent ability to pay a large judgment; on appeal, it was held that it was error sufficient to reverse a judgment, for counsel —against objection—to assume in argument that possibly pertinent facts are in the evidence when they are not. In *State* v. *Smith*, 75 N. Car. 306, a conviction was set aside because it appeared that "the purpose and natural effect of" language used by the prosecuting

attorney in addressing the jury "was to create a prejudice against the defendant, not arising out of any legal evidence before them." In *People* v. *Curran*, 207 Ill. App. 264, 287, the State's Attorney declared that an honest man invites investigation and puts himself in the witness chair to answer any question that may be put to him, and asked why the accused did not do so. These remarks were held to be improper and ground for reversal if the trial court in its charge had not instructed the jury to disregard them. To the same effect are the decisions in *Baughman* v. *State*, 49 Tex. Crim. R. 33, 90 S. W. 166; *State* v. *Goode*, 132 N. Car. 982, 43 S. E. 502.

The record before us shows that the court, by denying the motion made by the counsel for the accused, added the influence of its ratification and sanction to the effect which the considerations suggested by the State's Attorney would naturally have upon the conclusions of the jury. The charge of the court is not in the record, and we assume that in it no instruction was given upon this subject. But even if the jury had been told to forget or disregard these remarks, it is reasonably certain that they could not or would not do so.

The case before us is a criminal case, and the counsel whose statements are in question is the State's Attorney. He is not only an officer of the court, like every attorney, but is also a high public officer, representing the people of the State, who seek impartial justice for the guilty as much as for the innocent. In discharging his most important duties, he deserves and receives in peculiar degree the support of the court and the respect of the citizens of the county. By reason of his office, he usually exercises great influence upon jurors. His conduct and language in the trial of cases in which human life or liberty are at stake should be forceful, but

fair, because he represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice, or resentment. If the accused be guilty, he should none the less be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe. While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider. *Worden* v. *Gore-Meenan Co.*, 83 Conn. 642, 652, 78 Atl. 422; *Williams* v. *Brooklyn Elevated R. Co.*, 126 N. Y. 96, 102, 26 N. E. 1048; *People* v. *Greenwall*, 115 N. Y. 520, 526, 22 N. E. 180; *People* v. *Glass*, 158 Cal. 650, 112 Pac. 281.

We are satisfied that the reasoning and conclusions in the cases we have cited express the law, which must be strictly obeyed and enforced in order to protect the rights of the accused in criminal cases. This law was not observed and enforced in this case. Because it was not, the accused has not had an impartial trial. Therefore the verdict must be set aside.

Although this determination disposes of this appeal, the accused has assigned for errors certain rulings of the trial court on the admission of evidence. These questions are likely to be involved in a new trial, and therefore may properly be settled now. One of the witnesses for the State was a police lieutenant who had been in service twenty-eight years, and who was in command at headquarters during the night when the accused and his companions were arrested, and had received by telephone some information about them. The witness was asked what instructions he then gave to his subordinate officers. Against the objection of the accused, the witness testified that he

told the officers to "go out and see if they could not pick up five men" driving a large car with a Massachusetts number, "that they had stopped at Warehouse Point, stolen some gasoline, and did not pay for it, and that the car might have been stolen"; and that thereupon the officers went out and came back in a short time "with five men and the car." Counsel for the accused at once moved that the trial court instruct the jury not to consider the witness' statement as to what he said to the officers and that the testimony be struck out. The court thereupon ruled that "that part of the directions he gave to the officer may stand; the rest of it may go out." Subsequently the same witness testified that he told another officer, after the accused and his associates had been brought into the police station together, "to look these fellows over; that they did not look good to me [him]; that they looked like gunmen." Against objection the court allowed this testimony to go to the jury. We think that in both instances the whole testimony should have been stricken out, and the jury distinctly instructed to disregard it. It was hearsay and irrelevant, not connected with any evidence admitted or offered, and tended strongly to prejudice the minds of his triers against the accused. The State had the right to show the fact that instructions were given to the officers, and that they acted accordingly, but the specific instructions could not be stated by the witness.

The burden lay on the State to prove that the two steel bars which were found in the possession of the accused when he was arrested were jimmies or implements of housebreaking. For this purpose, the State produced a witness who testified that his gasoline tank had been broken open by the accused and his companions about an hour before their arrest; that he examined the tank at once, and found on it certain

marks which had been made on it by the instrument used to break it open. The steel bars were then shown to the witness, and he was asked whether the tank could have been broken open with those implements, and he answered that it could. For the same purpose these bars were examined by police officers of long service, who were familiar with the instruments used by criminals in committing crimes, and who testified that these steel bars were jimmies and instruments used for various purposes, including housebreaking. This testimony was plainly pertinent and admissible to prove a material element of the crime alleged in the information.

None of the other exceptions to the rulings of the trial court are worthy of consideration.

The information in this case charged the accused, under § 6238 of the General Statutes, with having in his possession by night, without lawful excuse, certain instruments of housebreaking; and set up, further, that twice before the date of this alleged crime he had been convicted, sentenced and imprisoned in a State prison. Before the trial the accused filed a motion that so much of the information as refers to his former convictions be stricken out because it was immaterial and prejudicial to his legal rights, and, if that were not done, that the court should direct that those statements in the information should not be read to the jury before, during, or at the end of the trial. The court overruled this motion. Then the accused filed a motion that the court direct the trial of the accused, first, on the charge of having housebreaking instruments in his possession, as alleged in the information; and that, in connection with the trial of that issue, the part of the information setting out his former convictions be not read to the jury; and that, if they should determine this issue against him, then the part of the

information relating to previous convictions be read to them, and the second issue raised by these allegations be submitted to them for their consideration and decision. This motion also the court overruled.

During the trial the accused excepted to the admission of any evidence of former convictions, and to any testimony to identify him as the person so convicted. The decisions of the trial court on these motions and this evidence are assigned as reasons of appeal.

Our Indeterminate Sentence statute (§ 6660) provides that when any person who is to be sentenced after conviction of a crime "shall have twice before been convicted, sentenced and imprisoned in a state prison or penitentiary, the court shall sentence said person to a maximum of thirty years." Concerning this provision we said, in State v. Reilly, 94 Conn. 698, 703, 110 Atl. 550: "Inasmuch as the maximum sentence for an offense is imperatively fixed by the statute, in case the defendant has been twice before convicted, sentenced and imprisoned, and this maximum exceeds the maximum in case of a first offense, it follows that if the State intends to make any claim to raise the penalty by reason of such prior conviction, the defendant should in the information be apprised of this additional element upon which such claim of the State is to be based. It is, accordingly, a uniform rule that such additional allegations relating to the penalty alone should be incorporated in the information"; and, after citing many authorities, we added, "and so are the authorities generally." Therefore, the trial court made no mistake in refusing to strike out of the information in this case the statements relating to former convictions.

But in State v. Reilly, 94 Conn. 698, 110 Atl. 550, we further said, on page 705, that in such an information "two separate issues are presented: first, was the de-

fendant guilty of the crime charged? This relates to the crime only. Second, if guilty, had the defendant twice before been convicted, sentenced and imprisoned? This relates to the penalty only, and does not involve or state any other or different crime from that first stated. The jury must by their verdict answer each of these issues." This plainly indicates that the first issue should be taken up and tried by the jury first and separately; and, if the accused be found guilty on this issue, then the second issue should be tried; and, if the accused be found guilty on this issue also, then the maxmium punishment prescribed by the statute must be the sentence of the court. It cannot be believed that an accused man would ever have a fair trial, resulting in a verdict not affected by prejudice or by considerations by which the jury should not be influenced, if, during that trial, allegations that he has twice before been convicted of State prison crimes have been read to the jury, and evidence of his former convictions has been placed before them. It is beyond question that knowledge of such facts must necessarily prejudice the minds of his triers against the accused, and cause him more serious injury than that which he would suffer from any improper remarks of the State's Attorney. No one would claim that in a trial for a specific crime evidence of another crime committed by the accused could be admitted for the purpose of proving his guilt of the crime alleged. The purpose of a criminal trial in this State is not more to punish the guilty than to discharge the innocent. Whatever may have been the previous offenses or the bad character of the accused, the law surrounds him with the presumption that he is innocent of the specific crime with which he is charged, and, while that presumption has no evidential force, it casts upon the State the burden of proving that the accused is guilty

of that specific crime by evidence of facts material and relevant to that crime. *State* v. *Smith*, 65 Conn. 283, 31 Atl. 206. Upon such evidence only, the jury are sworn to render their verdict. A man is not to be convicted of one crime by proof that he is guilty of another. Therefore our law sedulously guards against the introduction of evidence of any matter immaterial or irrelevant to the single issue to be determined. The purpose of these salutary laws might often be defeated if the minds of the jurors were subjected to the influence of facts or considerations having no legitimate bearing on the only question they have to decide, and their verdict be reached under the impulse of passion, sympathy, or resentment. Such a verdict is illegal and will be set aside. *Worden* v. *Gore-Meenan Co.*, 83 Conn. 642, 652, 78 Atl. 422; *People* v. *Sharp*, 107 N. Y. 427, 14 N. E. 319; *People* v. *Molineux*, 168 N. Y. 264, 61 N. E. 286. The rule everywhere enforced excludes not only evidence of another crime, but also evidence tending to degrade the accused, to prejudice the jury against him, to divert their minds from the real issue which they have to determine, or to persuade them by matters which they have no legal right to consider that the accused, for reasons other than those based upon legitimate evidence, was more likely to have committed the particular crime for which he is on trial.

As we said in *State* v. *Reilly*, 94 Conn. 698, 110 Atl. 550, such an information as this presents two separate issues, and the issue of former convictions does not relate to the issue of the commission of the specific crime alleged, and for which only the accused is to be tried; and the fact of former convictions does not tend in any way to prove the commission of the crime charged. It follows that, until the verdict of the jury on the principal issue has been rendered, no knowledge of

the alleged previous convictions should reach them, either by reading that part of the information in which they are recited, or by evidence relating to them. If the verdict on the principal issue be guilty, then the second issue may be submitted to the jury.

In the absence of statutory regulation in this State, it is our opinion that a procedure similar to that prescribed by an English statute (24 & 25 Vict. c. 99, s. 37) should be followed. *Reg.* v. *Martin,* L. R. 1 Cr. C. 214. The information should be divided into two parts. In the first, the particular offense with which the accused is charged should be set forth; and this should be upon the first page of the information and signed by the prosecuting officer. In the second part, former convictions should be alleged, and this should be upon the second page of the information, separable from the first page, and signed by the prosecuting officer. The entire information should be read to the accused and his plea taken in the absence of the jurors. When the jury has been impaneled and sworn, the clerk should read to them only that part of the information which sets forth the crime for which the accused is to be tried. The trial should then proceed in every respect as if there were no allegations of former convictions, of which no mention should be made in the evidence, or in the remarks of counsel, or in the charge of the court. When the jury retire to consider their verdict, only the first page of the information, on which the crime charged is set out, should be given to them. If they return a verdict of guilty, the second part of the information, in which former convictions are alleged, should be read to them without reswearing them, and they should be charged to inquire on that issue. Of course, the accused may plead guilty to this part of the information, and then no further proceedings before or by the jury would be necessary. No reason appears why

the accused, if he should choose, might not submit this issue to the court without the jury.

In this way the well-recognized rights of an accused person will be protected, and the principles of justice and our long-established laws, which have been designed to secure an impartial trial in every criminal cause, will be recognized, respected and obeyed.

There is error and a new trial is ordered.

In this opinion the other judges concurred.