**Francis WILSON, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 6, 1966.

Rehearing Denied July 1, 1966.

Leland H. Logan, J. David Francis, John David Cole, Bowling Green, for appellant.

Robert Matthews, Atty. Gen., Charles W. Runyan, Asst. Atty. Gen., Frankfort, for appellee.

WILLIAMS, Judge.

Appellant Francis Wilson was convicted of storehouse breaking as a third offender and given a sentence of life imprisonment. He appeals from the judgment of the Monroe Circuit Court.

The basic facts are as follows: O. E. Comer, the operator of a general store located about nine miles from Tompkinsville, in Monroe County, testified that on June 6, 1964, around midnight, the burglar alarm went off and two men were seen running from the store carrying a satchel. Tompkinsville city policeman Joe Petitt and city police judge Elmer Turner and state trooper Robert Stivers were called to the store and they proceeded to make a search. A car was found about a quarter of a mile from the store on a dead-end gravel road. After removing the coil on the motor, Petitt and Turner waited in the weeds near the car and Stivers left to check the ownership of the car. After they had waited almost an hour, one man walked by the car. About 15 minutes later appellant approached the car, opened the trunk, put on a Warren County license plate, took off a Webster County plate and threw it into the weeds. He then tried to start the car. Petitt arrested him, and Turner searched him and allegedly found a pistol on him which had been removed from the store.

The pistol was the only evidence which linked appellant with the storehouse breaking. He testified that Petitt did not make the arrest until Turner had searched him. No search warrant was obtained. The satchel was later found about 200 yards from the car. No fingerprints were introduced to link appellant with the pistol, satchel, or the store itself.

Appellant testified that he had sold whiskey to a man from Tennessee and the exchange had been made on this dead-end road. Testimony was given by a liquor salesman in Bowling Green that appellant had purchased $569.20 worth of whiskey at 8:30 p. m. on June 5, 1964, and a large amount of money was found on appellant after his arrest. Appellant contended that the bootlegging was the reason for his suspicious activities. However, he did not produce as a witness the man who had allegedly bought the whiskey.

Appellant was taken into custody and was not allowed to consult an attorney until the next day. During the period of detention no evidence which was used at the trial was elicited from him except his fingerprints. They were used to prove he was the same man who had previously been convicted in the Warren Circuit Court in order to establish the case under the habitual criminal act.

Appellant elected to take the stand, and on cross-examination the following questions and answers were made:

"67 Did you ever know Elmer Turner before?

A  Yeah I have heard of him.

68  Did you ever see him?

BY MR. HOLLINGSWORTH: (defense attorney) TELL IT, TELL IT.

A  Yes, I have knowed Elmer Turner quite a few years. He killed two of my wives own cousins.

69 Did what?

A He killed two of my wives own cousins.

70 That before you killed this man or afterwards?

A What do you mean, which one did I kill?

71 Didn't you kill a man a few years ago?

A I shore did. He robbed a place, and I caught him on the road. I shot him. I didn't aim to, I tell you that, I sure didn't aim to.

72 Did you kill him to keep him from talking?

BY MR. HOLLINGSWORTH: YOUR HONOR, PLEASE I OBJECT.

BY THE COURT: OBJECTION SUSTAINED. I think you both have gone far afield.

BY PAUL CARTER: HE BROUGHT THAT IN FIRST."

Appellant made a motion for a mistrial which was overruled. However, the trial judge did admonish the jury to disregard the testimony with reference to any killing.

Appellant now argues that this line of questioning which called to the jury's attention information which tended to show appellant had committed another crime, which was independent of and unrelated to the one for which he was on trial, was reversible error. He relies on Turpin v. Commonwealth, Ky., 352 S.W.2d 66 (1961), and Scamahorne v. Commonwealth, Ky., 357 S.W.2d 30 (1962). Appellee counters that this general rule does not apply in a case where the defense counsel precipitated the questions on the part of the Commonwealth and also failed to make a timely objection thereto.

Defense counsel made his objection about as soon as could be expected in the heat of the trial. This Court is not prepared to hold that an objection made two questions late is not timely and will not be considered. It can likewise hardly be contended that the defense counsel's action in stating "Tell it, tell it," precipitated the question about appellant killing a man "to keep him from talking."

The introduction of this testimony was undoubtedly erroneous, but the real question is whether it constituted reversible error or was merely harmless error upon consideration of the entire case. RCr 9.24, 9.26. The answer, in our judgment, is that the admonition of the court cured the error which was not of such gravity as to have been a cause for reversal.

Appellant next contends that the arrest was unlawful and therefore the evidence (the small gun which was the only evidence which linked appellant with the storehouse breaking) obtained incident to this arrest was not lawfully introduced. KRS 431.005 reads as follows:

"(1) A peace officer may make an arrest in obedience to a warrant, or without a warrant when a felony or misdemeanor is committed in his presence or when he has reasonable grounds to believe that the person being arrested has committed a felony.

"(2) A private person may make an arrest when a felony has been committed in fact and he has reasonable grounds to believe that the person being arrested has committed it."

Appellee seems to concede that Turner and Petitt should be treated as private persons since they were outside the territorial limits of the city. Brittain v. United States Fidelity & Guaranty Co., 219 Ky. 465, 293 S.W. 956 (1927).

Here, a felony had in fact been committed, and the only issue is whether, after reviewing all the pertinent facts, Petitt or Turner had reasonable grounds to believe that appellant had committed the felony. Probable cause or reasonable grounds is defined in 5 Am.Jur.2d, Arrest, section 48, where it is stated:

"The existence of 'probable cause,' justifying an arrest without a warrant, is determined by factual and practical con-

siderations of everyday life on which reasonable and prudent men, not legal technicians, act. It is a pragmatic question to be determined in each case in the light of the particular circumstances and the particular offense involved.

"Probable cause does not depend on the actual state of the case in point of fact, as it may turn out upon legal investigation, but on knowledge of facts and circumstances that would be sufficient to induce a reasonable belief in the truth of the accusation. It depends on the facts known, at the time of the arrest, to the person by whom the arrest is made, from which it follows that an arrest cannot be justified by what a subsequent search discloses. On the other hand, if probable cause existed at the time of the arrest, the fact that investigation proves the person arrested to be innocent does not make the arrest unjustifiable.

"In determining probable cause, all the information in the officer's possession, fair inferences therefrom, and observations made by him, are generally pertinent; and facts may be taken into consideration that would not be admissible on the issue of guilt.  *  *  * "

The facts which support the reasonable grounds are as follows: (1) The out-of-county car parked about a quarter of a mile from the scene of the break-in on a dead-end road; (2) the time of day (1:30 or 2:00 a. m.); (3) the switching of license plates; (4) the car's being equipped as a police car (appellant was a constable in Warren County); (5) the fact that a man had approached the car 15 minutes earlier.

■ Appellant contends that preliminary facts on which the admissibility of the evidence depends are in dispute and therefore the matter should have been submitted to a jury. This contention is erroneous since there is no dispute as to the pertinent facts within Petitt's knowledge when he made the arrest. Therefore, the rule concerning submitting conflicting issues to the jury announced in Parrott v. Commonwealth, Ky., 287 S.W.2d 440 (1956), is not controlling, and the issue is properly a question of law for the Court. We conclude, after a thorough examination of all the facts, that there were reasonable grounds to make a lawful arrest, and, therefore, the evidence obtained incident to that arrest was admissible.

■ Appellant contends that the denial of his three requests to consult his attorney immediately after his arrest violated his right to counsel under the Sixth Amendment of the Constitution of the United States. There is absolutely no merit in this argument. Appellant had counsel at his arraignment in the circuit court and at his trial, and no incriminating statements or items of evidence were elicited from him during the period of detention. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), stands for the proposition that no incriminating statement elicited by the police during the interrogation may be used against the accused at his trial unless the accused was advised of his right to remain silent and, if he requests it, he must be allowed to consult counsel. In the instant case no incriminating statements were elicited; therefore, appellant's constitutional rights were not infringed in this regard.

■ Appellant finally contends that he was denied due process of law because two former convictions were introduced to the jury for joint consideration with the issue of the specific crime alleged. This action was taken by the Commonwealth's Attorney pursuant to our habitual criminal act, KRS 431.190. It is argued that the Sixth Amendment guarantees an accused the right to trial by jury and this implies a trial by an impartial jury. (Although the Constitution does not demand the use of jury trials in a state's criminal procedure where a jury trial is provided, it must be a fair trial. Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Fay v. People of State of New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 1043 (1947). And it is fur-

ther argued that, if the jury hears evidence of two former convictions for crimes of the same nature as the crime for which the defendant is being presently tried, the jury is no longer impartial. Appellant cites several cases which have held that a reading to the jury of that part of the indictment which relates to a defendant's prior convictions, destroys the impartiality of the jury and denies him due process. Cf. Lane v. Warden, Maryland Penitentiary, 320 F. 2d 179 (4th Cir. 1963). He also relies on a recent Tennessee decision which held that the introduction of the former convictions denies the defendant the fundamental fairness which is due him. Harrison v. State of Tennessee, 394 S.W.2d 713 (Tenn.1965). In State v. Ferrone, 96 Conn. 160, 113 A. 452, 457 (1921), the Court stated:

> "* * * It cannot be believed that an accused man would ever have a fair trial, resulting in a verdict not affected by prejudice or by considerations by which the jury should not be influenced, if during that trial allegations that he has twice before been convicted of state prison crimes have been read to the jury, and evidence of his former convictions has been placed before them. * * *"

The Connecticut Court adopted a procedure in which the indictment is divided into two parts, each on a separate page. The first part sets forth the present offense with which accused is charged and the second part alleges the necessary information required to enhance the penalty upon conviction under the first part. In the absence of the jury the entire indictment is read to the defendant and his plea to each part taken. The next steps will depend on the pleas entered by the defendant. If, as in the case at bar, the defendant enters a not guilty plea to each count of the indictment, then the prosecutor reads to the jury the first count of the indictment, containing the charge of the present crime, and a full trial is held with the issues confined to the guilt or innocence of the defendant under this count. If the jury returns a not guilty

verdict under this first count, the matter is ended. If the verdict of the jury is guilty, under the first count, then this same jury is read the second count and a trial held thereon confined to the issues raised by the second count.

Idaho has recently adopted this procedure by judicial decision. State v. Johnson, 86 Idaho 51, 383 P.2d 326 (1963). However, it should be noted that at least two courts have refused to adopt the holding of the above cited cases. Breen v. Beto, 341 F.2d 96 (5th Cir. 1965); Edwards v. State (Texas), 388 S.W.2d 427 (Cr.App.1965). And at least one court has adopted the *Ferrone* procedure only prospectively. Harris v. State (Okl.Cr.), 369 P.2d 187 (1962).

In a very recent decision by this Court the majority decided not to alter the existing procedure relating to the habitual criminal act. Jones v. Commonwealth, Ky., 401 S.W.2d 68, decided March 25, 1966. The majority is still of that opinion.

The judgment is affirmed.

MILLIKEN, J., dissenting.

MILLIKEN, Judge (dissenting).

I dissent from the majority opinion because I think the prevailing practice in the trial of recidivist cases in this state violates procedural due process, but I agree that the Court's opinion correctly reflects the established procedure in this state in criminal trials of persons who have been convicted of other offenses.

I believe a much fairer trial is afforded by limiting the use of the defendant's past convictions to the issue of his punishment and not to the issue of his guilt, and so I would not let the jury know of the defendant's criminal record (where the defendant does not take the witness stand) until the jury has made its finding as to whether defendant is guilty of the crime for which he is being tried. If he is found guilty, his

past criminal record is very pertinent to the extent he should be punished. If the defendant testifies in his own defense then, of course, his past criminal record is pertinent to whether he should be believed, but in trials where the defendant does not take the witness stand, for whatever reason, it seems to me that it would be much fairer procedure to require a jury to find him guilty or not guilty on the same procedural basis accorded a defendant who had no criminal record to haunt him.

I do not believe there can be any serious doubt about the tendency of human beings serving on juries being like the rest of us —more ready to believe a person who has been convicted of a crime is more likely to commit another crime than is one who has no criminal record, but guilt should not be determined by jury's tendencies but by proof. In the Court's opinion, Judge Williams has quoted the Connecticut Supreme Court's opinion descriptive of the practice I believe Kentucky should adopt in the trial of recidivist cases. Tennessee recently did. Harrison v. State (1965), Tenn., 394 S.W. 2d 713, and also see Miller v. State (1965), Ark., 394 S.W.2d 601.