STATE OF CONNECTICUT *v.* BALBIR SINGH
(AC 19243)

Foti, Pellegrino and Healey, Js.

Argued June 8—officially released August 29, 2000

*Jeremiah Donovan,* for the appellant (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James G. Clark,* senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Balbir Singh, appeals from the judgment of conviction, rendered after a jury trial, of two counts of arson in the first degree in violation of General Statutes § 53a-111 (a) (1) and (4).[1] On appeal, the defendant claims that he was deprived of a fair trial because of (1) prosecutorial misconduct, (2) comments by a court-appointed translator and (3) the admission of expert testimony in violation of his right to confrontation. We affirm the judgment of the trial court.

---

[1] General Statutes § 53a-111 (a) provides relevant part: "A person is guilty of arson in the first degree when, with intent to destroy or damage a building . . . he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied . . . or (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury."

The defendant was acquitted of one count of arson in the first degree in violation of § 53a-111 (a) (3), which applies when "such fire or explosion was caused for the purpose of collecting insurance proceeds for the resultant loss . . . ."

The jury reasonably could have found the following facts. Beginning in December, 1994, the defendant rented the first two floors of 1195 Chapel Street in New Haven, the basement of which housed the defendant's Prince Restaurant. The other floors of the building contained apartments occupied by college students. The defendant's lease was to run until October 31, 1999, but was terminable in the event that the premises were destroyed by fire or explosion. The defendant was experiencing financial difficulty with his restaurant business. In 1995, he had missed some rent payments and needed to take a $10,000 loan to pay his employees. In February, 1996, the defendant admitted that his business was not "particularly good" and "just pretty much shaky." By the spring of 1996, the defendant was driving a cab because his restaurant business was not doing well enough to meet his debts.

On July 6, 1996, the night of the incident at issue, the doorman at the defendant's apartment complex observed the defendant and his father enter the lobby at about 11 p.m., which comported with their usual routine. The doorman found it unusual, however, that the defendant approached him and asked him for the time, despite the fact that there was a large clock on the wall. The doorman also noticed while he was speaking with the defendant, that the defendant appeared to be looking at the security monitors, which cover four of the six entrances to the building.

At about midnight on July 7, 1996, Christopher Gansen, a student who lived near the Prince Restaurant, was walking home and saw a man of Asian-Indian descent who appeared to be agitated and nervous. The man crossed the street in front of Gansen, having come from the vicinity of the Prince Restaurant. According to Gansen, the streetlighting was adequate and allowed him to see the man's facial features.

At 12:24 a.m. on July 7, 1996, firefighters from the New Haven fire department arrived at 1195 Chapel Street to find black smoke coming from the building. The firefighters gained entry by forcing a locked rear door and by smashing open a rear glass door. After putting out the fire in the basement, the firefighters forced open the front door and broke open the first floor windows of the building to examine the first floor.

At 1:30 a.m., Frank Dellamura, a fire investigator in the office of the New Haven fire marshal, arrived and interviewed firefighters and examined the building. He observed that the doors and windows of the building had been forced or smashed in, and confirmed from firefighters on the scene that they were responsible for the broken windows and the forced doors.

Dellamura noted the black smoke, which suggested that an accelerant had been used to start the fire. On the basis of burn patterns and other physical evidence, Dellamura concluded that the fire had started in the basement. There, a dog trained by the state police to detect petroleum based byproducts noticed several items.[2] Dellamura also detected a noticeable gasoline odor and discovered that a fire alarm panel had been disconnected from its battery backup power. Dellamura concluded that the fire had been set.

On July 7, 1996, Dellamura and Joseph Pettola, a member of the fire investigation unit of the New Haven police department, visited the defendant at his apartment, which was two blocks from the fire scene. Dellamura and Pettola informed the defendant that there had been a fire in his restaurant. Before the two men told the defendant that arson was suspected, the defendant became hysterical, exclaiming that the fire had been set by a former restaurant employee who had been

---

[2] Gas chromatography and mass spectrometry tests later confirmed that the items contained a petroleum based product consistent with gasoline.

fired the previous week.[3] The defendant claimed that he and his father had left the restaurant at 11 p.m. the previous night and that he had remained in his apartment all night.

Anxious to get to his restaurant, the defendant ran out of his apartment wearing sandals on his feet. Dellamura suggested that because of the messy nature of the fire scene, the defendant should instead wear shoes. The defendant ignored Dellamura's suggestion and wore sandals to the scene of the fire. The property manager of the building, who also was inspecting the fire scene, noticed that the defendant was wearing sandals at the scene of the fire.

On July 8, 1996, Dellamura and Pettola returned to the defendant's apartment. After the defendant consented to a search of his apartment, a state police canine alerted the police to a pair of black loafers in a closet. Tests later confirmed the presence of gasoline on the loafers. The defendant admitted to owning the shoes and claimed that they must have been contaminated by gasoline when he wore them to inspect the fire scene the previous day with the investigators. The investigators, however, recalled that the defendant had worn sandals when he visited the fire scene.

On July 16, 1996, Dellamura and Pettola visited the apartment of Gansen, the student who had seen an Asian-Indian man in the vicinity of the Prince Restaurant on the night of the fire.[4] Gansen was shown an array of six photographs of Asian-Indian males. He instantly recognized the defendant as the man he had seen on the night of the fire at about 12 a.m.[5] and subsequently

---

[3] It later was learned that the former employee had been working out of state on the night of the fire.

[4] On the night of the fire, Gansen gave firefighters at the scene a brief description of the man he had seen.

[5] The defendant claimed that on the night of the fire he returned to his apartment at 11 p.m. and never left that night.

made an in-court identification of the defendant. The jury properly found enough evidence to convict the defendant of two counts of arson in the first degree.

## I

The defendant first claims that he was deprived of a fair trial because of prosecutorial misconduct when he was cross-examined and in final argument in violation of his rights under the sixth and fourteenth amendments to the United States constitution.[6]

The defendant failed to preserve his claims at trial[7] and now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[8] We conclude that the defendant's claims fail under the third part of *Golding* because he cannot show that the alleged violations clearly exist and clearly deprived him of a fair trial.

---

[6] The defendant also claims a violation of his rights under article first, § 8, of the constitution of Connecticut. Because he provides no independent analysis of his state constitutional claim, we limit our review to his federal constitution claim. See *State* v. *Carter*, 228 Conn. 412, 417 n.6, 636 A.2d 821 (1994).

[7] The defendant claims that while he "did not properly preserve all of the claims at trial for which he now seeks review, [he] did, however, object with enough frequency to alert the trial court to the persistent misconduct." Our review of the record discloses that the objections were insufficient individually or cumulatively to alert the trial court as to the now claimed persistent misconduct. Our Supreme Court has held that failure of defense counsel to take exception to remarks of the prosecutor, either at the time they were made or at the close of the final argument, is a waiver of the right of the defendant to preserve this claim as error. *State* v. *Lubesky*, 195 Conn. 475, 484, 488 A.2d 1239 (1985).

[8] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

"[T]o deprive a defendant of his constitutional right to a fair trial, however, the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . [M]oreover . . . [*Golding*] review of such a claim is unavailable where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial . . . . *State* v. *Atkinson*, 235 Conn. 748, 769, 670 A.2d 276 (1996)." (Internal quotation marks omitted.) *State* v. *Correa*, 241 Conn. 322, 356–57, 696 A.2d 944 (1997).

We review the defendant's claims because the record is adequate to do so and because an allegation of prosecutorial misconduct in violation of a fundamental right is of constitutional magnitude. The record, however, does not support the defendant's claim that he clearly was deprived of a fair trial and, therefore, it fails under the third prong of *Golding*.

In determining whether the defendant was deprived of his due process right to a fair trial, we must first decide whether the prosecutor's remarks were, in fact, improper, and, if so, whether they substantially prejudiced the defendant. See *State* v. *Oehman*, 212 Conn. 325, 336, 562 A.2d 493 (1989). In so doing, "we focus on several factors: (1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the conduct; (3) the frequency of the conduct; (4) the centrality of the misconduct to the critical issues of the case; (5) the strength of the curative instructions adopted; and (6) the strength of the state's case." *State* v. *Williams*, 41 Conn. App. 180, 190, 674

A.2d 1372, cert. denied, 237 Conn. 925, 677 A.2d 950 (1996).

## A

The defendant argues that during cross-examination of him, the state improperly, either expressly or impliedly, utilized questions that required him to characterize the veracity of witnesses who had testified against him and that the questions escalated into demands that he label those witnesses liars. He argues that this constituted a cumulative pattern of misconduct that culminated when the prosecutor emphasized the defendant's testimony in closing argument to the jury.

Although this type of questioning may be improper under certain circumstances; cf. id.; when the defendant chooses to testify and his or her testimony is the opposite of or contradicts the testimony of other witnesses, the basic issue of credibility is presented to the trier of fact. When the defendant's testimony suggests that a prior state's witness' testimony is not true, the jury is faced with a credibility determination. The role of the jury is not usurped by this type of cross-examination as it might be if such prior testimony could be attributed to defects or mistakes in a prior witness' perception or inaccuracy of memory, rather than to lying. In the context of such a credibility determination, as existed here, questions directed to the defendant as to whether certain state's witnesses were lying were not improper.

The defendant correctly points out that he argued that Gansen's testimony as to identification was not untrue, but that instead it was based on an innocent misperception, that is, misidentification. Our review of the record discloses that although Gansen's positive identification of the defendant may be contradictory to the defendant's denial that he was the person whom

Gansen saw, the state posed no question to the defendant as to whether Gansen was lying.[9]

The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. *State* v. *Ubaldi*, 190 Conn. 559, 562, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983). This case does not reveal a pattern of prosecutorial misconduct relating to the cross-examination of the defendant. The defendant was not deprived of a fair trial, and his constitutional right to due process was not violated during his cross-examination.

## B

The defendant also claims that as part of the cumulative pattern of prosecutorial misconduct, the prosecutor, in his final arguments, improperly expressed his views on the evidence, commented on matters that were not part of the record, and attempted to appeal to the emotions, passions and prejudices of the jury. Because the defendant again fails to satisfy the third prong of *Golding*, we conclude that the alleged constitutional violation did not clearly exist and that the defendant was not deprived of a fair trial.

It is well established that prosecutorial misconduct can occur in the course of closing argument. See *State* v. *Atkinson*, supra, 235 Conn. 768–69. "While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider." *State* v. *Ferrone*, 96 Conn. 160, 169, 113 A.

---

[9] In final argument, however, the state did make reference to whether Gansen was lying.

452 (1921). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith* v. *Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). In order to deprive a defendant of his constitutional right to a fair trial, the prosecutor's conduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Internal quotation marks omitted.) *State* v. *Williams*, 204 Conn. 523, 539, 529 A.2d 653 (1987).

The defendant claims that the prosecutor repeatedly expressed his personal views about the witnesses and the evidence. We disagree.

It is improper for a prosecutor to express his opinion, directly or indirectly, as to the defendant's guilt. *State* v. *Mills*, 57 Conn. App. 202, 207, 748 A.2d 318, cert. denied, 253 Conn. 914, 915, 754 A.2d 163 (2000). It is not improper for the prosecutor to point out how the evidence was presented, what evidence was presented, what reasonable conclusions could or should be made by the jury and what factual inferences could be drawn by the jury from the facts found. The prosecutor's attempt to do that was evident when he told the jury: "This is the one chance I get to tell you how I think this evidence all fits together and how I think you're going to decide that it all fits together." Although some of his comments during final argument employed phrases such as "I submit," "I find" and "I believe," when read in context it seems clear that there was not good cause for the defense counsel to have objected. It is not improper for the prosecutor to highlight the evidence presented, which he may claim is favorable to his position that he proved each and every essential element of the crimes charged beyond a reasonable doubt.

The defendant also alleges that the prosecutor commented on matters that were not part of the record. A

prosecutor, in fulfilling his sworn duties, must confine the arguments to the evidence in the record. See *State* v. *Binet*, 192 Conn. 618, 631, 473 A.2d 1200 (1984); *State* v. *Ferrone*, supra, 96 Conn. 169.

While a prosecutor may argue the state's case forcefully, the argument must be fair, and based on the facts in evidence and reasonable inferences to be drawn from those facts. *State* v. *Bova*, 240 Conn. 210, 243, 690 A.2d 1370 (1997). Counsel, in addressing the jury, must be allowed a generous latitude in argument and, ultimately, the proper scope of closing argument lies within the sound discretion of the trial court. *State* v. *Copas*, 252 Conn. 318, 337, 746 A.2d 761 (2000). Our review of the record discloses that some of the prosecutor's arguments that referred to the evidence came very close to impermissible comment. They may properly have called on the jurors' common knowledge or common sense, or sought inferences not necessarily "compelled by the evidence [but] rather . . . only . . . reasonably susceptible of such an inference"; id., 340; or factual inferences on the basis of already inferred facts. *State* v. *Crafts*, 226 Conn. 237, 244, 627 A.2d 877 (1993). Our review of the record leads us to conclude that the argument, as referring to evidence, did not cause the jury to resort to speculation.

The defendant also contends that the prosecutor's final argument appealed to the emotions, passions and prejudices of the jury, which is impermissible. See *State* v. *Watlington*, 216 Conn. 188, 193, 579 A.2d 490 (1990). Such appeals may cause the jury to divert its attention from its duty to decide the case on the evidence. *State* v. *Couture*, 194 Conn. 530, 562, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). A prosecutor may, however, present arguments with logical force and vigor. *State* v. *Sherman*, 38 Conn. App. 371, 401, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995). Our review of the challenged

remarks leads us to conclude that they were not improper. Even if the challenged remarks were inappropriate because they were made as an appeal for sympathy, they were not egregious or part of a pattern of misconduct throughout the trial.

Prosecutors hold an important position in our judicial system and have an obligation to abide unfailingly to our rules of law and practice. The burden, however, is on the defendant to show that the prosecutor's remarks were prejudicial, as claimed, in light of the entire proceeding. See *State* v. *Cosgrove*, 186 Conn. 476, 488–89, 442 A.2d 1320 (1982). The defendant has failed to do so. There was no constitutional violation, and the defendant was not deprived of a fair trial.

## II

The defendant next contends that he was deprived of a fair and impartial jury because of a court interpreter's unsolicited comment before the jury. The defendant acknowledges that he did not preserve this claim at trial by making a motion for a mistrial or by requesting the court to give the jury a curative instruction. Therefore, he now seeks *Golding* review. See footnote 8.

During the cross-examination of the defendant's father and after a long line of questions and answers translated between English and Punjabi, the court-appointed interpreter in the jury's presence spontaneously interjected the following: "Forgive me, Your Honor, but he fully understands my questions, and I should like to bring to your attention [that] he's trying to evade the questions."

The court gave the following curative instruction: "Now, let me just give the jury a little caution. Interpreting questions and answers can be very frustrating, and you're all aware of the emotions at play here. You're the ones who have to decide whether the questions are

being answered truthfully or not. The interpreter has to tell me the amount of cooperation that he's getting, that he believes he's getting from the witness, but it is your determination of the credibility of this witness, and you shouldn't be influenced by what the interpreter tells me about the level of cooperation. You're the ones who have to judge the testimony, and that information is just so I can move the testimony along and should not be used by you to evaluate the testimony of the witness."

The defendant claims that the court's curative instruction did not remedy the damage to the credibility of the witness. The absence of any objection by the defendant to the instruction, however, speaks to the instruction's adequacy. The jury is presumed to follow the court's directions in the absence of a clear indication to the contrary. *State* v. *Raguseo*, 225 Conn. 114, 131, 622 A.2d 519 (1993).

## III

The defendant claims finally that the court improperly admitted expert testimony that included inadmissible hearsay, which violated the defendant's right to confrontation. We disagree.

This claim involves the testimony of Dellamura, the investigator from the fire marshal's office, who gave expert testimony regarding his investigation of the fire and his determination that it was incendiary in nature and set by human hands. The portion of the testimony at issue here relates to the condition of the restaurant's windows and doors on the night of the fire. Because the firefighters found the doors and windows of the building secured, the jury was left to infer that the fire had been set by someone with access to the building and not by someone who had entered by force.

Dellamura testified that when the firefighters arrived at the restaurant, they found all of the doors locked

and secured, and forced open the doors to gain entry to the building. Dellamura also testified that when the firefighters arrived, the windows of the building were intact. According to Dellamura, he verified that the restaurant's windows were broken by the firefighters in an attempt to ventilate smoke from the building. This testimony was based on Dellamura's interviews with firefighters as well as his examination of the building.

At trial, the defendant's counsel objected to Dellamura's testimony, claiming that what Dellamura had been told by other firefighters was inadmissible hearsay. After hearing argument outside the presence of the jury, the court overruled the defendant's objection. The defendant now claims that this ruling was an abuse of the court's discretion, which violated the defendant's right to confrontation.

At the outset, we note that "[t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Berger*, 249 Conn. 218, 229, 733 A.2d 156 (1999).

"An expert may base his opinion on facts or data not in evidence, provided they are of a type reasonably relied on by experts in the particular field." (Internal quotation marks omitted.) *George* v. *Ericson*, 250 Conn. 312, 325, 736 A.2d 889 (1999). An expert in the field of arson investigation certainly would be expected to rely in part on statements made to him by firefighters who

were at the scene of the fire.[10] The statements relied on by Dellamura, therefore, were of the type reasonably relied on by experts in arson investigations.

Furthermore, reliance on information provided by others does not violate the confrontation clause where the expert is available for cross-examination concerning the nature and reasonableness of his reliance. *Reardon* v. *Manson*, 806 F.2d 39, 42 (2d Cir. 1986), cert. denied sub nom. *Reardon* v. *Lopes*, 481 U.S. 1020, 107 S. Ct. 1903, 95 L. Ed. 2d 509 (1987). Here, Dellamura was subjected to cross-examination, and the defendant was free to challenge the reliability of the statements relied on by Dellamura.[11] See *United States* v. *Young*, 745 F.2d 733, 761 (2d Cir. 1984) (defendants free to expose through cross-examination weaknesses in prosecution's widespread use of expert testimony), cert. denied sub nom. *Myers* v. *United States*, 470 U.S. 1084, 105 S. Ct. 1842, 85 L. Ed. 2d 142 (1985).

"Of course, when the prosecution seeks to introduce a hearsay statement without producing the declarant, the confrontation clause requires a showing that the statement bears adequate indicia of reliability and trustworthiness." *Reardon* v. *Manson*, supra, 806 F.2d 43. The defendant claims that the statements relied on by Dellamura lacked sufficient indicia of reliability. We

---

[10] 1 C. McCormick, Evidence (4th Ed. 1992) § 15, p. 66 n.9 ("arson expert . . . relies upon oral statements made by a firefighter on the scene . . . . The arson expert may reasonably rely on oral statements of another firefighter relating matters of personal knowledge; experts customarily rely on such statements, and because the statements are made pursuant to a business duty to report, they are sufficiently trustworthy to make such reliance reasonable").

[11] Indeed, in ruling that Dellamura would be allowed to testify regarding statements made by other firefighters, the court noted that the defendant was free to challenge the reliability of his testimony through cross-examination. Speaking to the defendant's counsel, the court stated, "You have identified the classic way an expert opinion is undermined and you're going to have a chance to cross-examine to check into those details . . . but I'm going to overrule your objection."

disagree. Dellamura interviewed firefighters at the scene, walked with them through the building and visually verified what they had told him. Furthermore, the firefighters were under a business duty to report accurately to Dellamura. See footnote 10. The firefighters' statements here were supported by adequate indicia of reliability and trustworthiness.

The defendant also claims that even if the firefighters' statements that the doors and windows of the building were secured when they arrived were reliable, they had nothing to do with Dellamura's conclusion that the fire was set. According to the defendant, Dellamura's testimony that the firefighters found the doors and windows secured when they arrived only served to cast suspicion on the defendant and had no relevance to Dellamura's analysis that the fire resulted from arson. We disagree with the defendant's argument.

We conclude that reports from firefighters regarding the condition of entryways into a burning building would likely be relevant to an expert's arson investigation. If firefighters arrive at a fire and find that a door to the building has been jimmied or a window has been smashed, an investigator could use this information to determine that someone possibly had entered the premises unlawfully. This information might lead the investigator to more quickly suspect arson and could play a role in the expert's investigation. Although a jimmied door or a smashed window would not be conclusive of arson, the condition of entryways to the building might be a factor in an investigator's overall analysis of a fire scene.

Further, where the investigator finds evidence of an accelerant at the scene, as occurred in this case, the condition of entryways to the building could play an important role in the investigator's assessment of the cause of the fire. If the firefighters arrive and find the

entryways intact, the investigator can more quickly rule out the possibility that an animal or an intruder had contaminated the scene by tracking in trace elements of the accelerant. Cf. *State* v. *Gray*, 221 Conn. 713, 721, 607 A.2d 391 (defense claiming accelerant detected at fire scene could have been attributable to innocent presence of debris containing that accelerant), cert. denied, 506 U.S. 872, 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992).

Dellamura's testimony that firefighters arriving at the scene found the windows and doors of the building secured does bear on the defendant's potential responsibility for the fire. The condition of the doors and windows, however, also was relevant to Dellamura's investigation of the cause and origin of the fire. The fact that this testimony was relevant to Dellamura's determination of the cause of the fire is not diminished by the fact that it also was germane to a related matter, namely, the defendant's responsibility for the fire. We conclude that the court did not abuse its discretion in allowing Dellamura's testimony and that the defendant was not deprived of his right to confrontation of witnesses.

The judgment is affirmed.

In this opinion the other judges concurred.