
# STATE OF CONNECTICUT *v.* MICHAEL SPYKE
## (AC 21585)

Lavery, C. J., and Schaller and O'Connell, Js.

Argued December 3, 2001—officially released January 25, 2002*

---

* January 25, 2002, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*James B. Streeto,* deputy assistant public defender, for the appellant (defendant).

*Bruce R. Lockwood,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Vicki Melchiorre,* senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Michael Spyke, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes §§ 53a-8 and 53a-54a and possession of a weapon in a motor vehicle in violation of General Statutes (Rev. to 1997) § 29-38. The jury also found that the defendant had committed a class A, B or C felony with a firearm, and that finding was used by the court to enhance the defendant's sentence. He raises seven claims on appeal, six of which we can review. The defendant claims that (1) the court improperly denied his motion to suppress, (2) the court improperly failed to disclose all relevant material for cross-examination following an in camera

review, (3) the court improperly barred cross-examination regarding prior misconduct by the arresting officers, (4) the state's attorney committed prosecutorial misconduct in her closing argument, (5) the court's "Chip Smith"[1] charge coerced the deadlocked jury to reach a verdict on the charge of murder as an accessory and (6) the court improperly failed to give a jury instruction that the jury could consider the circumstances under which the defendant's statement was taken. The defendant agrees that the seventh issue, that our Supreme Court should exercise its supervisory power to order that the Chip Smith charge be modified or abandoned, is an issue for that court alone to decide. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 10:15 p.m. on December 20, 1997, the defendant and two others jumped out of a stolen van and shot the victim, Malik Shannon, four times with handguns and an assault rifle in the Blue Hills Avenue section of Hartford. The victim died as a result.

On April 22, 1998, Detectives Robert Dionne and Stephen Grabowski of the Hartford police department arrested the defendant pursuant to a warrant for his involvement in the killing. He was brought to the police station for questioning, executed a *Miranda*[2] waiver and confessed to taking part in the shooting.

The state charged the defendant with murder, conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a, possession of a weapon in a motor vehicle and commission of a class A, B or C felony with a firearm. The court denied the defendant's motion to suppress his confession as involuntary on December 1, 1999, and a jury trial began shortly there-

---

[1] *State* v. *Smith*, 49 Conn. 376, 386 (1881).

[2] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

after. At trial, the defendant maintained that he had been only a passenger in the van and did not shoot the victim, and again claimed that his confession was involuntary. The defendant was found guilty on December 13, 1999, of all charges except the conspiracy charge. On the conspiracy charge, the jury was deadlocked eleven to one in favor of conviction, and a mistrial was declared as to that count. Additional facts will be provided as necessary.

I

The defendant challenges the court's denial of his motion to suppress the written statement that he made to Dionne and Grabowski in which he admitted that he shot the victim. The court found that the defendant was in custody and that the police were required to read him his *Miranda* rights prior to interrogation, but that the defendant's waiver of those rights was knowing, intelligent and voluntary. The defendant does not challenge the test used by the court or most of its factual findings, but claims that it improperly concluded that the confession was voluntary. He claims that his statement was involuntary in violation of the fifth and fourteenth amendments to the United States constitution and article first, §§ 7 and 8, of the constitution of Connecticut.[3] We disagree.

"[T]he use of an involuntary confession in a criminal trial is a violation of due process. . . . The state has the burden of proving the voluntariness of the confession by a fair preponderance of the evidence. . . . The ulti-

---

[3] We limit our analysis to the federal constitutional claims because the defendant "has proffered no argument that the rights afforded to him by the federal and the state constitutions are in any way distinguishable with respect to the substantive issue that he has raised." (Internal quotation marks omitted.) *State* v. *Valentine*, 255 Conn. 61, 69 n.11, 762 A.2d 1278 (2000). Consequently, we see no reason, on the facts of this case, to analyze independently the defendant's argument as it relates to the state constitution. Id.

mate test remains . . . Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." (Citations omitted; internal quotation marks omitted.) *State* v. *Pinder*, 250 Conn. 385, 418–19, 736 A.2d 857 (1999).

A trial court determines the voluntariness of a confession on the basis of the circumstances. The factors may include the age of the accused, his level of education, his intelligence, whether he was advised of his constitutional rights, "the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food and sleep." (Internal quotation marks omitted.) Id., 419. Other factors are the accused's prior interaction with the criminal justice system; *State* v. *Williams*, 65 Conn. App. 59, 73, 782 A.2d 149, cert. denied, 258 Conn. 923, 782 A.2d 1251 (2001); and voluntary use of illegal drugs or alcohol. *State* v. *Stankowski*, 184 Conn. 121, 134, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981).

On appeal, "[t]he trial court's findings as to the circumstances surrounding the defendant's interrogation and confession are findings of fact . . . which will not be overturned unless they are clearly erroneous." (Internal quotation marks omitted.) *State* v. *Pinder*, supra, 250 Conn. 420. We accord plenary review to the legal conclusion that the confession was voluntary based on our own scrupulous examination of the record. Id., 420–21.

We conclude that the court took the appropriate factors into account and gave them the proper weight. In a thoughtful and well reasoned oral decision, the court found that the state met its burden to show that the

defendant's statement was voluntary under the totality of the circumstances. Although the defendant had a limited formal education and testified that he had dropped out of school the year before his confession after three unsuccessful attempts to complete the ninth grade, the court found there was no evidence of mental defect and that a letter that the defendant wrote to the court evinced his ability to read and write at a level that "far surpasse[d]" the minimum. The court also found that the defendant had a "very easy way of communicating." It rejected the defendant's argument that his age of sixteen years and eleven months strongly counseled that his confession was involuntary, and properly concluded that "it has been left for me to decide in the case of anybody over the age of sixteen, to make a determination on a case-by-case basis depending on the unique circumstances of each individual involved . . . ." The court also noted that the defendant had heard a recitation of *Miranda* rights during a prior interaction with the police.

As to the contours of the interrogation and confession, the court stated that the account of what occurred was largely a "conflict of credibility," and credited the detectives' testimony, concluding "that the testimony of the defendant in many respects was not credible . . . ." Citing *State* v. *Chung*, 202 Conn. 39, 50–51, 519 A.2d 1175 (1987), the court noted that an oral or written waiver is "strong proof" of its validity and that the defendant signed the waiver form and initialed the individual rights that he was waiving. As to the defendant's assertion that he was under the influence of illy,[4] the court did not find "any qualitative evidence other than

---

[4] The defendant understood illy to be mint leaves soaked in embalming fluid. In *State* v. *Billie*, 47 Conn. App. 678, 680 n.2, 707 A.2d 324 (1998), aff'd, 250 Conn. 172, 738 A.2d 586 (1999), we described it as "the street name for a drug consisting of a nonuniform mixture of phencyclidine (PCP), wood alcohol, methanol and formaldehyde."

[the defendant's] testimony" that he was impaired. It noted that no drugs were found on the defendant's person, that Dionne testified that he did not smell the odor of illy when he and Grabowski arrested the defendant and that the defendant testified that the drug had the effect of giving him a lot of energy, a condition that dissipated when he was questioned. The court also discredited the defendant's testimony that he was physically abused and threatened by Dionne. Additionally, the court took into account that the defendant was "allowed to make the telephone call to his mother" beforehand and that he was allowed to make other telephone calls after the confession. It also found that the questioning lasted approximately three and one-half hours of the five hours that the defendant was at the station, which it concluded was not unduly long. The defendant was not deprived of food or other comforts, and the court noted that the defendant refused Grabowski's offer for food. Finally, it found that the defendant did not request an attorney.

On appeal, the defendant asks us to weigh some of the court's findings differently. Specifically, he argues that his lack of education and the length of interrogation "weigh heavily" in making his confession involuntary. He restates allegations that he was under the influence of illy, "a powerful and bizarre intoxicant," and curiously claims that Grabowski's offer of food and drink may have contributed to the interrogation's coerciveness. According to the defendant, "[a]lthough [an offer of food] can be seen as an effort to alleviate the coercive atmosphere in which the defendant finds himself, it also serves to underline the remorseless and continuing nature of the interrogation." He argues that his youth, however, is the factor that "must be given the highest precedent."

The defendant's assertion that he was under the influence of illy is undercut by his own testimony as to its

effects. See *State* v. *Negron*, 221 Conn. 315, 323 n.8, 603 A.2d 1138 (1992). Furthermore, the court's factual finding that there was no corroborating evidence that the defendant was even on the drug is not clearly erroneous. The defendant's educational level; see *State* v. *Northrop*, 213 Conn. 405, 418, 568 A.2d 439 (1990), and cases cited therein; and the length of the interrogation; see *State* v. *DeAngelis*, 200 Conn. 224, 233–35, 511 A.2d 310 (1986); cf. cases cited in *State* v. *Carter*, 189 Conn. 631, 638, 458 A.2d 379 (1983); do not implicate involuntariness. As to the defendant's claim that his youth "must be given the highest precedent," our Supreme Court repeatedly has held that an individual's minority is only one factor in the totality of circumstances. See *In re Manuel R.*, 207 Conn. 725, 736 n.6, 543 A.2d 719 (1988); *State* v. *Simms*, 201 Conn. 395, 415, 518 A.2d 35 (1986); *State* v. *Turcio*, 178 Conn. 116, 144–45, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980); *State* v. *Oliver*, 160 Conn. 85, 94, 273 A.2d 867 (1970), cert. denied, 402 U.S. 946, 91 S. Ct. 1637, 29 L. Ed. 2d 115 (1971). Although General Statutes § 46b-137[5] requires a parent to be present and the police to give the equivalent of *Miranda* warnings where confessions are made by a "child," that applies only to a person *under* the age of sixteen.[6] *State* v.

---

[5] General Statutes § 46b-137 (a) provides in relevant part: "Any admission, confession or statement, written or oral, made by a child to a police officer or Juvenile Court official shall be inadmissible in any proceeding concerning the alleged delinquency of the child making such admission, confession or statement unless made by such child in the presence of his parent or parents or guardian and after the parent or parents or guardian and child have been advised (1) of the child's right to retain counsel, or if unable to afford counsel, to have counsel appointed on the child's behalf, (2) of the child's right to refuse to make any statements and (3) that any statements he makes may be introduced into evidence against him."

[6] General Statutes § 46b-120 provides in relevant part: "The terms used in this chapter shall, in its interpretation and in the interpretation of other statutes, be defined as follows: (1) 'Child' means any person under sixteen years of age . . . (2) 'youth' means any person sixteen to eighteen years of age . . . ."

*Whitaker,* 215 Conn. 739, 748, 578 A.2d 1031 (1990). The defendant here was a month shy of his seventeenth birthday and was not entitled to the statutory protection. Additionally, the police allowed the defendant to call his mother before questioning, which is beyond what is required. See id., 749.

Accordingly, we conclude that the court properly denied the defendant's motion to suppress his confession.

## II

The defendant also claims that the court made improper evidentiary rulings that affected his ability to question the arresting detectives effectively. First, he asks that we review the personnel files of Dionne and Grabowski that were viewed by the court in camera and order the court on remand to disclose any information that would be probative of their veracity. He also claims that the court improperly limited his cross-examination of Dionne and Grabowski, depriving him of his right to confrontation under the sixth and fourteenth amendments to the United States constitution and article first, §§ 7 and 8, of the constitution of Connecticut.[7]

Shortly before the motion to suppress, the defendant raised the possibility that he might cross-examine Dionne and Grabowski about an incident on February 26, 1998, between themselves and another officer that resulted in extensive media coverage and arrest warrants for both detectives for breach of the peace in violation of General Statutes § 53a-181. The defendant had obtained a copy of Grabowski's arrest warrant and claimed that it showed that the police investigators had concluded that Dionne and Grabowski lied about their role in the incident. The defendant argued that he

---

[7] We limit our analysis to the federal constitutional claims because that is what the defendant has done. See footnote 3.

should be allowed to ask the detectives about whether they had lied in order to attack their credibility. At the suppression hearing, defense counsel argued that "if Dionne and Grabowski can assault . . . . [an] off-duty police officer, can interfere with on-duty officers who come . . . to thwart that incident and then lie about that, allegedly, afterward, they certainly can do the same thing to my client two months later." He also subpoenaed the detectives' personnel files and internal affairs reports regarding the incident and asked the court after an in camera review to disclose any information that would bear on their veracity. Both parties and the court agreed at the start of the trial that the defendant would be allowed to ask the detectives whether they had made any false statements in connection with the February, 1998 incident, but would not allow extrinsic evidence on the matter. During the trial, however, the court reversed itself and announced sua sponte that it would sustain an objection to any question about whether the detectives lied to investigators. It also stated that after the in camera review, it did not find anything in the personnel files that bore on veracity.

"A trial court's ruling on the admissibility of evidence is afforded great deference. . . . The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . Furthermore, [t]o establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial." (Citations omitted; internal quotation marks omitted.) *State* v. *Valentine*, 255 Conn. 61, 69, 762 A.2d 1278 (2000). After our own review of the challenged evidence, we conclude that the court did not abuse its discretion.

## A

The defendant asks that we review the personnel files of the arresting detectives and order the court to turn over any additional material that should have been disclosed. The court reviewed the files in camera and concluded that they were "barren of anything which I would consider go to the issues of truth and veracity." To the extent that there were any issues that had a "slight" bearing on credibility, the court determined that it would "inject a number of collateral issues into these proceedings, which potentially could be confusing to the jury."

Although public records generally are available pursuant to the Freedom of Information Act, General Statutes § 1-200 et seq., the confidentiality of information in police personnel files that may be relevant to a witness' credibility is protected by General Statutes § 1-210 (b) (2).[8] See *State* v. *Leonard,* 31 Conn. App. 178, 198, 623 A.2d 1052, cert. granted on other grounds, 226 Conn. 912, 628 A.2d 985 (1993) (appeal withdrawn January 7, 1994). To comply with the federal confrontation clause, a court should reveal such information to a defendant, usually after an in camera inspection, only if it is "clearly material and relevant to the issue involved." *State* v. *Januszewski,* 182 Conn. 142, 173, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981); see also *State* v. *Santiago,* 224 Conn. 325, 337, 618 A.2d 32 (1992). "[E]vidence is material only if

---

[8] General Statutes § 1-210 provides in relevant part: "(a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-212. . . .

"(b) Nothing in the Freedom of Information Act shall be construed to require disclosure of . . . (2) Personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy . . . ."

there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *State* v. *Harris*, 227 Conn. 751, 762, 631 A.2d 309 (1993). Such a determination should be made on a case-by-case basis. *State* v. *Januszewski*, supra, 173. In the event that a trial court does not turn over an entire file to a defendant, we analyze the sealed undisclosed portion to determine whether the court abused its discretion. See *State* v. *Harris*, supra, 762–63; see also Practice Book § 40-42.

After our own in camera review, we cannot conclude that the court abused its discretion in refusing to turn over any information that the defendant did not already have because the material was neither clearly material nor relevant.

B

The defendant next challenges the court's ruling disallowing him from asking Dionne or Grabowski whether they lied to the internal affairs department regarding the February, 1998 arrest. He argues that the court abused its discretion in not allowing him to question the detectives, even with the agreement that he would not attempt to introduce external evidence. We disagree.

At the same time that it stated that it would not turn over any information in the personnel report, the court also informed the defendant that it would sustain an objection to any question regarding the February, 1998 incident, even if he did not attempt to offer extrinsic evidence. It stated that it interpreted the arrest warrant to indicate that there were competing stories about the dispute and "that there may [have been] more backers of one side than the other, and, therefore, Detectives Dionne and Grabowski may not have been the persons

who were ultimately believed. But I don't think that rises to the level of saying that this presents an issue of veracity."

"The sixth amendment to the United States constitution guarantees the right of an accused in a criminal prosecution to confront and cross-examine the witnesses against him. . . . [T]he primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Therefore, an accused's right to cross-examination to elicit facts tending to show motive, interest, bias and prejudice may not be unduly restricted by the wide discretion of the trial court. . . . In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial. . . . In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . .

"We have emphasized in numerous decisions, however, that the confrontation clause does not give the defendant the right to engage in unrestricted cross-examination. . . . [T]he right to cross-examine a witness pertaining to specific acts of misconduct is limited in three distinct ways. . . . First, cross-examination may only extend to specific acts of misconduct other than a felony conviction if those acts bear a special significance upon the issue of veracity . . . . Second, [w]hether to permit cross-examination as to particular acts of misconduct . . . lies largely within the discre-

tion of the trial court. . . . Third, extrinsic evidence of such acts is inadmissible." (Citations omitted; internal quotation marks omitted.) *State* v. *Valentine,* supra, 255 Conn. 70–71.

While the court could have allowed the defendant to question the detectives on that subject with the understanding that he would not be able to introduce extrinsic evidence; see, e.g., *State* v. *Chance,* 236 Conn. 31, 59–61, 671 A.2d 323 (1996); it did not abuse its discretion in prohibiting the questioning in these circumstances. Recently, our Supreme Court upheld a trial court's ruling on a motion in limine that prohibited a defendant from questioning a detective about a prior incident where the detective allegedly had coerced a witness to make a false statement in an affidavit and was later found liable in a civil trial for false arrest and malicious prosecution. See *State* v. *Valentine,* supra, 255 Conn. 72–74. Holding that the trial court did not abuse its discretion, the *Valentine* court concluded that the previous judgment did not directly implicate the detective's veracity in that case and that the court properly could have found that it was a collateral matter. Id., 73–74. In light of *Valentine,* we cannot conclude that the court abused its discretion in limiting the defendant's proposed cross-examination.

## III

The defendant also alleges that portions of the state's closing and rebuttal arguments were improper, depriving him of a fair trial. He argues that the assistant state's attorney asserted that the defendant was a liar and interjected a fact not in evidence. Although he did not object during the trial, he asks us to undertake *Golding*[9] review.

---

[9] Pursuant to *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), an appellant can prevail on a constitutional claim not previously raised only if: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly

The defendant first claims that the assistant state's attorney improperly argued that he was lying during his testimony. During her closing, she stated that "[the defendant] admitted to you that he lied under oath at his preliminary hearing to try to get his confession thrown out,"[10] and, in rebuttal, she stated: "I submit to you that the defendant was not truthful when he took the witness stand." As the defendant correctly notes, and the state conceded at oral argument, the defendant never testified that he had lied at the suppression hearing, but rather testified that he had said that he did not remember because he did not want to answer certain questions at that time.[11] The defendant also claims that the assis-

---

deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Because this is a conjunctive test, we are free to assess the defendant's claim by "focusing on whichever condition is most relevant in the particular circumstances." Id., 240.

[10] The assistant state's attorney's comments were as follows: "Now, I know the defense is going to get up here and say you can't possibly believe Nemlon Adams because he's lied before under oath and he made a deal with the state. But he's going to want you to believe his client, who lied under oath, too. His client admitted to you that he lied under oath at his preliminary hearing to try to get his confession thrown out. That's exactly what Nemlon Adams did. He lied to try to keep himself out of trouble as well."

[11] The assistant state's attorney and the defendant engaged in the following dialogue:

"[Assistant State's Attorney]: When were you in a van on Cornell Street?

"[Defendant]: When everybody else was in the van.

"[Assistant State's Attorney]: All right. And when was that, sir?

"[Defendant]: December 20th.

"[Assistant State's Attorney]: December 20, 1997?

"[Defendant]: Yes.

"[Assistant State's Attorney]: All right. And was that what you testified to a couple of days ago at your preliminary hearing in this matter?

"[Defendant]: You didn't ask me.

"[Assistant State's Attorney]: Did I not ask you what you were doing on December 20, 1997?

"[Defendant]: I didn't even remember.

"[Assistant State's Attorney]: Oh, your memory's improved in the last couple of days?

"[Defendant]: I didn't want to . . . answer the question."

tant state's attorney's statement that the decision of the Hartford police not to audiotape or videotape confessions was up to Dionne and Grabowski's supervisors is unsupported by the evidence.

"[P]rosecutorial misconduct of constitutional proportions may arise during the course of closing argument . . . . [T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, and not the culpability of the prosecutor. . . . The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Citations omitted; internal quotation marks omitted.) *State* v. *Brown,* 256 Conn. 291, 306, 772 A.2d 1107, cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001). Furthermore, our Supreme Court in *Brown* recently reaffirmed that a defendant's *Golding* claim will not be successful if the alleged misconduct "merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial." (Internal quotation marks omitted.) *State* v. *Brown,* supra, 306. Accordingly, we analyze the defendant's claims under a two step process: (1) first, we determine whether the challenged statements were improper; (2) second, if so, we determine whether they caused the defendant substantial prejudice. See *State* v. *Garrett,* 42 Conn. App. 507, 515–16, 681 A.2d 362, cert. denied, 239 Conn. 928, 929, 683 A.2d 398 (1996). We conclude that because the statements were either fair inferences supported by the record or of such a brief character and later cured by a jury instruction, this claim fails under the third prong of *Golding.* See *State* v. *Burton,* 258 Conn. 153, 165–66, 778 A.2d 955 (2001).

Although it is improper for a prosecutor to express an opinion, either directly or indirectly, as to the defendant's guilt or the credibility of witnesses; see *State* v. *Williams,* 204 Conn. 523, 541, 529 A.2d 653 (1987); it is not improper to use the words "I submit" to highlight

reasonable inferences that the jury could draw from the evidence presented. See *State* v. *Singh*, 59 Conn. App. 638, 647, 757 A.2d 1175 (2000), cert. granted on other grounds, 255 Conn. 935, 767 A.2d 1214 (2001). Furthermore, even though it is unprofessional, a prosecutor can argue that a defendant is a "liar" if such an argument is supported by the evidence. See *State* v. *Oehman*, 212 Conn. 325, 334, 562 A.2d 493 (1989). Accordingly, we conclude that the assistant state's attorney's submission that the defendant was not truthful during his testimony was a fair inference to draw, in light of the contrary testimony of other witnesses. It was also a fair inference that the decision not to videotape the defendant's confession was outside the control of Dionne and Grabowski, as Grabowski testified that he did not know why the department did not videotape confessions.

The statement that the defendant admitted that he lied in his suppression hearing, however, is not supported by the evidence. "A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . Statements as to facts that have not been proven amount to unsworn testimony, which is not the subject of proper closing argument." (Citations omitted; internal quotation marks omitted.) *State* v. *Alexander*, 254 Conn. 290, 306, 755 A.2d 868 (2000). Although this portion of the closing argument was unsupported, we conclude that this single instance of misconduct was not so egregious that it substantially prejudiced the defendant. Not only was it limited to a single instance, but the court also charged the jury that the closing arguments are not evidence and that its memory of the evidence was the controlling one.[12] Such an instruction

[12] The court charged in relevant part: "Certain things are not evidence, and you may not consider them in deciding what the facts are. These include the following: The arguments and statements by the attorneys. The attorneys are not witnesses. What they have said in their closing arguments is intended to help you interpret the evidence, but it is not evidence. If the facts as you

mitigated any adverse effect that the impermissible statement may have had. See *State* v. *Williams*, supra, 204 Conn. 540 (setting forth factors to be taken into account by appellate court when reviewing prosecutorial misconduct claim).

## IV

The defendant's final two claims allege improprieties in the court's jury charge that he claims deprived him of his rights under the sixth and fourteenth amendments to the United States constitution and article first, §§ 7 and 8, of the constitution of Connecticut.[13] The defendant devoted a large portion of his brief and most of his oral argument to the claim that the court coerced a deadlocked jury into reaching a verdict on the murder charge. He also claims that the court improperly failed to charge the jury that it could consider the circumstances under which his statement was taken, which largely constitute the factors that he claims made his statement involuntary. In both instances, he concedes that he did not raise the claim at trial but again asks us to undertake *Golding* review. See footnote 9.

## A

The defendant argues that the court's instructions taken as a whole coerced a jury that had shown the intent to deadlock on the murder charge. He points us to selected portions of three separate instructions. At the end of the second full day of deliberations, the jury submitted a note to the court stating that it was unable to reach a verdict on the murder charge. The defendant points to the portion of Judge Gallagher's[14] response given on the beginning of the third day of deliberations in which she directed the jury that "with respect to the

remember them differ from the way that the attorneys have stated them, it is your memory and recollection that controls."

[13] We limit our analysis to the federal constitution because that is what the defendant has done. See footnote 3.

[14] During part of jury deliberations, Judge Gallagher substituted for Judge Solomon, who had taken a scheduled vacation.

[murder] count, you need to reach a verdict on the offense charged." Later in the day, the jury submitted a note to the court asking if it could be unanimous on some counts but not on others. The court stated that it could, but asked the jurors to "keep working." Still later, the jury sent a note stating that it was unanimous on the possession of a weapon in the vehicle charge, but deadlocked eleven to one in favor of conviction on the remaining counts. The note concluded: "We strongly feel that further deliberation will not help one juror. We have a serious problem." In response, the court gave a "Chip Smith" instruction.[15] Although the defendant concedes that the "Chip Smith" charge has been approved on numerous occasions by our Supreme Court; see, e.g., *State* v. *Feliciano*, 256 Conn. 429, 439, 778 A.2d 812 (2001), and cases cited therein; he argues that it exacerbated the previous instruction as to the "need" to reach a verdict on the murder charge. Essen-

---

[15] The court's instruction was as follows: "Along these lines, the court would like to state the following to you. Although the verdict to which each of you agrees must express his or her own conclusions and not a mere acquiescence in the conclusion of your fellow jurors, yet, in order to bring your minds to a unanimous result, you should consider the question you have to decide not only carefully, but also with due regard and deference to the opinions of each other. In conferring together, you ought to pay proper respect to each other's opinion and listen with an open mind to each other's argument.

"If much the larger number of you reach a certain conclusion, a dissenting juror or jurors should consider whether his or her opinion is a reasonable one when the evidence does not lend to a similar result in the mind of so many of you who are equally honest and equally intelligent with yourself who have heard the same evidence with the same attention with equal desire to arrive at the truth and under the same sanction of the same oath.

"If the majority of you are for one decision, the minority ought seriously to ask themselves whether they may not reasonably or ought not to doubt their own conclusions when they are not concurred in by most of those with whom they are associated. And they may well distrust the weight of sufficiency of the evidence upon which they rely when it fails to bring the mind of their fellow jurors to the same conclusions that you hold.

"I have stated this to you in order to get you to further consider in your deliberations the opinions of your fellow jurors. That is all."

tially, he argues that the court's instructions coerced the dissident juror to find the defendant guilty. We disagree.

Although "a defendant is not entitled to an instruction that a jury may hang . . . he is entitled to a jury unfettered by an order to decide." (Internal quotation marks omitted.) *State* v. *Breton*, 235 Conn. 206, 239, 663 A.2d 1026 (1995). "A jury that is coerced in its deliberations deprives the defendant of his right to a fair trial under the sixth and fourteenth amendments to the federal constitution . . . . Whether a jury [was] coerced by statements of the trial judge is to be determined by an examination of the record. . . . The question is whether in the context and under the circumstances in which the statements were made, the jury [was], actually, or even probably, misled or coerced." (Citations omitted; internal quotation marks omitted.) *State* v. *Pinder*, supra, 250 Conn. 427.

The defendant asks us to order a new trial on the basis of selected portions of selected instructions. Looking at the challenged instructions as a whole, we conclude that the court did not coerce the jury to reach a verdict. The court's instruction on the jury's "need" to reach a verdict on the murder count should not be read in isolation, but in context with the circumstances and the surrounding language. The jury's note read, "This jury is unable to reach a verdict on [the murder charge]." The court, *following the defendant's recommendation,* decided to limit its supplemental charge to the murder count and the lesser included offenses, as the jury could have reached a verdict on the remaining counts. Consequently, the court charged the jury: "I don't know where you are in your deliberations. And it is not necessary that I know where you are. I don't need to know, don't want to know where you are. But at this time, I would say to you with respect to the [murder charge] you need to reach a verdict on the offense charged. And that is . . . . accessory to murder. If you were to find the

defendant guilty of the offense charged of accessory to murder, then, of course, you would not consider the lesser included offense that Judge Solomon already gave you a charge on. However, if you were to find the defendant not guilty of . . . the offense charged, then you would go on to consider the lesser included offense. So basically, ladies and gentlemen, you cannot consider the lesser included offense unless and until you have reached a verdict on the offense charged." Such an instruction is neither coercive nor improper.

The court later reemphasized that it was not coercing the jury into reaching a verdict. In response to the note asking if the jury could be unanimous on some charges but hung on others, the court instructed that it could, but *asked* that it keep working on it. Such a request is consistent with Practice Book § 42-28, which provides that a judge "may require the [deadlocked] jury to continue their deliberations," as long as it is not for an unreasonable amount of time. Immediately prior to the "Chip Smith" charge, the court gave what our Supreme Court previously has called "patently fair threshold instructions"[16] that informed the jury that the charge to follow was not "coercive in any manner." See *State*

[16] Immediately prior to the "Chip Smith" charge, the trial court charged the jury as follows: "The court feels that this matter has been well tried. You have heard the evidence, and the court is of the opinion that it should give you additional instructions regarding this matter to see whether or not it is within your reach to arrive at a verdict in this matter.

"So, with [that] thought in mind, the court wishes to state to you at the outset that the additional instructions are not to be construed by you to be coercive in any manner or to compel you to arrive at a verdict. The instructions are designed to aid you in considering your own positions individually and weighing your individual positions against the collective position or the positions of other members of the jury and after having done so, to reconsider whatever conclusion that you individually may have reached, not to suggest to you in any manner that you are compelled to reach a verdict or that you must reach a verdict. The instruction that I shall now give you is only to provide you with additional information so that you may return to your deliberations and see whether you can arrive at a verdict."

v. *O'Neill*, 200 Conn. 268, 283, 511 A.2d 321 (1986). Accordingly, we conclude that the instructions were not coercive and that the defendant failed to satisfy the third prong of *Golding.*

We are not persuaded by the defendant's argument that because the jury found the defendant guilty · of murder but hung on the conspiracy to commit murder charge, it believed that it needed to come to a verdict on the murder charge but not on the other ones. A factually inconsistent verdict may be indicative of negotiation and compromise among the members of the jury and will not be overturned on appeal. See *State* v. *DeCaro*, 252 Conn. 229, 242–44, 745 A.2d 800 (2000).

The defendant also asks us to review his claim under the plain error doctrine. See Practice Book § 60-5. We decline to do so in instances such as these where the challenged conduct by the court is not incorrect. See *State* v. *Cobb*, 251 Conn. 285, 343 n.34, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000).

B

The defendant also claims that the court improperly failed to charge the jury sua sponte that it could take into account the circumstances of the defendant's confession when determining if it was voluntary. We decline to review this claim because it is evidentiary and not of constitutional magnitude, and thus fails *Golding*'s second prong. See *State* v. *Riddick*, 61 Conn. App. 275, 291, 763 A.2d 1062, cert. denied, 255 Conn. 946, 769 A.2d 61 (2001).

The judgment is affirmed.

In this opinion the other judges concurred.